TYGARD, Trustee, v. FALOR, Executor, Appellant.

Division Two, June 11, 1901.

1. **Executor:** WITHHOLDING ASSETS: INTERROGATORIES. Revised Statutes 1899, section 74, provides that, if an executor or other person interested in an estate file an affidavit that he believes any person has concealed, or embezzled, or wrongfully withheld any assets of the deceased, the court may compel the appearance of such person. Section 75 requires that, if a party does not admit allegations of affidavit, interrogatories be filed. An affidavit charged that an executor of the will had concealed and has in his possession certain assets of the estate, which he has neglected and refused to inventory. Thereupon certain interrogatories were filed, and answers by the defendant. *Held,* that, after the filing of the interrogatories and the answers thereto, it was immaterial that the affidavit only charged the concealing of assets, where the interrogatories and the answers did not refer to the concealing of assets, but only to the "withholding" of the same.

2. ———: WITNESS: WAIVER OF INCOMPETENCY. That in proceedings under Revised Statutes 1899, sections 74, 78, to compel an executor to inventory certain property of the estate, the plaintiff was compelled to file interrogatories for defendant to answer, did not make him a witness for plaintiff, so as to waive defendant's incompetency as a witness as to transactions had with his decedent.

3. ———: ———: INCOMPETENT. In proceedings against an executor to discover assets, the executor was an incompetent witness as to business occurrences between himself and the testator, his father, out of which the alleged withholding of assets arose.

4. **Evidence:** OBJECTION: SUFFICIENCY. An objection to a question is insufficient which merely states that the question is "incompetent."

5. ————: ADMISSION: BURDEN OF PROOF. In proceedings against an executor for withholding assets, where defendant admits having received money alleged to have been withheld, but states that it was a gift to him, the burden was on him to establish such fact.

6. **Gift by Testator:** INVENTORY: INSTRUCTION. In proceedings against an executor to recover assets alleged to have been withheld, where the executor claims that such property was given to him by his testator, an instruction that, if deceased gave it during his lifetime to the executor, he was not required to inventory it, was as favorable to defendant as the facts authorized.

Appeal from Vernon Circuit Court.—*Hon. D. P. Stratton,* Judge.

AFFIRMED.

*Templeton & Hales* and *M. T. January* for appellant.

(1) The burden of proof is always on the party holding the affirmative of the issue. It was therefore error to give instruction 5. (2) The probate court has no jurisdiction to try rights of property, and in this proceeding to discover assets under section 78, Revised Statutes 1889, its jurisdiction is limited to the inquiry of good faith, and a bona fide claim of title, whether well founded or not, is sufficient to defeat the proceeding. It was therefore error to refuse instructions B (2) and C (4). Gordon v. Eans, 97 Mo. 587; Hoehn v. Struttman, 71 Mo. App. 399; Stewart v. Glenn, 58 Mo. 489; In re Rachael Stewart, 67 Mo. App. 61; Woerner's Administration Law, sec. 151. If the foregoing statement is correct as a legal proposition, then it was error to refuse peremptory instruction A (1), as there was no evidence that defendant ever denied or attempted to conceal the possession of the money in controversy. (3) By calling as a witness or taking the de-

position of a party who is disqualified by statute to testify, the opposite party waives his incompetency and makes him a competent witness for all purposes.    Tomlinson v. Ellison, 104 Mo. 103; Ess v. Griffith, 139 Mo. 322; Borgess v. Vette, 142 Mo. 560.                                                :

*Wight & Wight* and *T. J. Smith* for respondent.

(1)    The plaintiff in this case never at any time took the deposition of the defendant nor called him as a witness in this proceeding, and therefore never at any time waived the question of his incompetency.    The interrogatories propounded were simply a part of the pleadings prescribed by statute in that respect, conformed somewhat to the old form of equity proceedings, where, in many of the States, interrogatories were held to be an essential part of a good bill.    Chapman v. Dougherty, 87 Mo. 617.    (2)    For property which the executor refuses to inventory, the heir or person interested could not sue, because, while the estate is in process of administration, the executor alone is entitled to the possession of personal property of the estate and he alone can maintain an action for its possession or discovery.    Smith v. Denny, 37 Mo. 20; Hellman v. Wallenkamp, 17 Mo. 407; Leitman, Executor, v. Leitman, 49 Mo. 117; State ex rel. v. Moore, 18 Mo. App. 410; Becraft v. Lewis, 41 Mo. App. 549; Boeger v. Langenberg, 42 Mo. App. 7. (3) The probate court has, and has by this court been held to have, jurisdiction in money matters simply as incidents to the powers conferred, and not found in the express powers granted.    State ex rel. v. Tolle, 47 Mo. 647; Yeoman v. Younger, 83 Mo. 424; In re Elliot, 83 Mo. 399; Hammons v. Renfrow, 84 Mo. 341; Hoffman v. Hoffman, 126 Mo. 687; Brown v. Brown, 68 Mo. 388; McCabe v. Lewis, 76 Mo. 296.

SHERWOOD, P. J.—Proceeding instituted in the probate court of Vernon county by Tygard as trustee, under the provisions of sections 74, 75, 77, 78, Un. Rev. Stats. 1899, against Charles Falor as executor of his father's will, to compel him to inventory certain property. Section 74 makes provision that: "If the executor or administrator, or other person interested in any estate, file an affidavit in the proper court, stating that the affiant has good cause to believe and does believe that any person has concealed or embezzled [or is otherwise wrongfully withholding] any goods, chattels, money, books, papers or other evidences of debt of the deceased, and has them in his possession or under his control, the court may cite such person to appear before it, and compel such appearance by attachment."

Section 75 requires, in case the party cited does not admit the allegations of the affidavit, that interrogatories be filed and answered by the party cited.

Section 77 declares how the issue raised upon the interrogatories and answers thereto shall be tried, and that if the issue be found adversely to the party cited, then the court shall compel the delivery of the property, etc., etc.

Section 78 gives like proceedings against executors and administrators as against others mentioned in section 75.

The preliminary affidavit filed by Tygard, in its charging part declares that: "Charles Falor, executor of the will of Elias Falor, deceased, at the county and State aforesaid, has concealed and now has in his possession certain property and assets belonging to the estate of said deceased, to-wit: money to the amount of between $2,700 and $2,800 (the exact amount of which is unknown to the affiant), which money he has neglected and refused and still neglects and refuses to inventory as a part of said estate, and to charge himself as such executor therewith. That said sum of money was received by said

Charles Falor as the agent of the said Elias Falor prior to the death of the said Elias, and was never accounted for by said Charles to the said Elias in his lifetime or to his estate since his death."

The executor was brought into the probate court upon citation, when the plaintiff propounded to him the following interrogatories:

"Interrogatory 1. Did you, previous to the death of your father, Elias Falor, between the first day of September, 1895, and the first day of March, 1896, ship any cattle to market at Kansas City or elsewhere for your father? If so, how many, in whose name were they shipped, at what place or station on the railroad were they shipped from, how much were they sold for, and how much money did you receive on account of the shipment and sale of the same?

"Interrogatory 2. If you answer that you did receive money for your father on account of the shipment and sale of cattle belonging to him, state what you did with the money; did you deposit it in any bank, if so, what bank, the date of such deposit, and in whose name was the deposit made?

"Interrogatory 3. If you answer that you did receive money belonging to your father on account of the shipment and sale of cattle belonging to him, between the dates mentioned in interrogatory 1, did you ever turn the same over to your father, and if not have you ever charged yourself with it as executor in your inventory of said estate?

"W. F. Tygard, Trustee for Leroy Falor et al.

"By S. A. Wight, Attorney."

Thereupon defendant filed to such interrogatories, these answers:

"First. In answer to the first interrogatory propounded by the above-named plaintiff, defendant says: I shipped be-

tween September, 1895, and March, 1896, three lots of cattle
to Kansas City. I do not remember the number. Shipped
in my name; shipped from Sprague, Missouri. The three
shipments amounted to $3,618.45, and I received that amount
on them.

"In answer to the second interrogatory propounded by the
above-named plaintiff, defendant says: All the above named
proceeds were deposited in the Conkling Bank, Nevada, Mis-
souri, in my name, as follows: September, about twenty-
third, 1895, $1,408.80; January 11, 1896, $829.66; February
11, 1896, $1,376.03. Of this money $829.66, the January
shipment, was afterwards deposited to my father's credit in
the Rich Hill Bank.

"In answer to the third interrogatory defendant says that
of the above proceeds of shipment of cattle, he deposited to the
credit of Elias Falor in the Rich Hill Bank on January 9,
1896, the sum of $829.66. The balance of said shipments,
amounting to the sum of $2,783.83, defendant never turned
over to his father for the reason that his father gave said money
to him and told him to keep it, and he has not charged himself
as executor with said sum for that reason.

"Defendant denies that he has concealed said money or
any other money or property belonging to the estate of Elias
Falor, deceased.

"CHARLES FALOR."

The trial in the probate court resulted in a finding and
judgment for defendant. Plaintiff took the case on appeal to
the circuit court, where, upon trial *de novo* upon the interro-
gatories and answers thereto, there was a verdict for him, the
verdict being: "We, the jury, find the defendant guilty of
wrongfully withholding $2,783 from the estate of Elias Falor
as charged." And on this verdict judgment went in con-

formity to section 78, compelling defendant executor to inventory the sum of money thus found by the verdict to be due the estate, and not inventoried and accounted for by such executor.

The court at the instance of plaintiff gave these instructions:

"It is admitted by the pleadings in this case that the defendant, Charles Falor, received the sum of $2,783 from the sale of cattle belonging to his father, Elias Falor, and sold by him as agent for his father, between the twenty-seventh day of August, 1895, and the first day of March, 1896, and that he did not pay the said sum of money to his father in his lifetime and has not since the death of his father charged himself in his inventory as executor of his father's estate with said money or in any way accounted to said estate for the same. Wherefore, the court instructs you that you will find the defendant guilty of wrongfully withholding said money from said estate in refusing to inventory the same as such executor, unless you shall further find from the evidence, that the said Elias Falor in his lifetime gave said money to said Charles Falor to keep and hold as his own property, and before you find that such alleged gift was made you must find from the evidence that said Elias Falor intended to and did part with all interest and title to the money in controversy, and in making said gift it was mutually understood and agreed between him and the said Charles Falor at the time that it was the absolute intention of the said Elias Falor to at once pass the title and possession of said money to said Charles Falor and that Charles Falor at that time so understood and accepted the same.

"The court instructs the jury that the burden of proof in this case is on the defendant, and unless you shall believe and find from the evidence that the defendant has proved the alleged gift by a preponderance of the evidence, you shall find

the defendant guilty.

"The court instructs the jury that the testimony of Charles Falor that his father never at any time loaned him, the said Charles Falor, any money, is immaterial, irrelevant and incompetent; therefore, the jury in arriving at their verdict should not consider such testimony."

To giving of which defendant excepted.

Defendant then asked, and the court gave this instruction:

"You are instructed that if you believe from the evidence Elias Falor, deceased, gave the money in controversy during his lifetime to his son, Charles Falor, then said Charles Falor as executor of his father's estate was not required to inventory said money as a part of said estate and your verdict should be for defendant."

Defendant then asked, and the court refused to give these instructions:

"The court instructs you that under the law and the evidence your verdict must be for defendant.

"You are instructed that this proceeding is in the nature of a criminal proceeding, and if you believe from the evidence that Charles Falor has refused to inventory the money in question as a part of the estate of Elias Falor because he claimed said money openly and in good faith as a gift from his deceased father, and has in no way attempted to conceal said money or deny the possession of it, your verdict will be for defendant.

"The court instructs the jury that the sole and only question presented in this issue for your decision is as to the guilt or innocence of the defendant, as to the concealing of the money in question as charged in the complaint."

To which refusal, exceptions were saved.

1.   The ruling made in Gordon v. Eans, 97 Mo. 587,

Vol 163 mo—16

was made on section 74, supra, as it now stands, the words in brackets having been added to that section by the Act of March 16, 1881. Whether that section could be applied to a proceeding then pending, I entertained doubt. I entertained doubt also, conceding it could be thus applied, whether this could be done without amendment of the affidavit, as to which the record was silent. What were the interrogatories or questions asked in that case, and the answers thereto, was also in doubt. In the case at bar, however, as appears from the affidavit already quoted, *no embezzlement* of the assets was charged. *"Concealing* has simply the idea of not letting come to observation." Crabb's Synonymes. The word *"conceal"* does not necessarily charge a criminal act. The act of concealing assets might well include, and be regarded as, the wrongful withholding of them; because a wrongful withholding may well consist with a retention under claim of right. And the words "or is otherwise wrongfully withholding," were doubtless added to meet the exigencies discovered to exist in the Gordon-Eans case. Besides, in the present case, the affidavit referred to charges refusal and neglect to inventory the money in litigation. But, be this as it may, section 77, aforesaid, makes provision how the issue in such a case is to be made up, and that is by interrogatories filed and answers thereto. Here, in none of the interrogatories filed, was anything said about embezzlement or concealment, nor in the answers thereto, except in defendant's answer to the third interrogatory. No objection was taken to these interrogatories either in the probate or circuit court; and those interrogatories and their answers settled and definitely fixed the issue to be tried. This being the case, the affidavit had become *functus officio* when the case went to trial.

2. And as plaintiff, as a necessary step, *had to file interrogatories to defendant,* in order to institute proceedings

against him, such filing could not be used as a basis and means of waiving defendant's incompetency as a witness. Waiver can alone arise as the result of a voluntary act, and not as the result of one which the law commands to be done as a means of procedure in court. Hence, the cases cited by defendant to support the view of qualifying a disqualified party by calling him as a witness, or taking his deposition, have no bearing or authority in the present instance.

3. And defendant was an incompetent witness as to business occurrences taking place during his father's life, inasmuch as the original contract or cause of action on which he relied arose, as it is said, between his father and himself; and his father was dead. [Wendover v. Baker, 121 Mo. loc. cit. 297, and cas. cit. & subseq. cas.]

4. Section 4656, Un. Rev. Stats. 1899, in regard to a *femme covert* testifying, contains these provisions: "No married woman shall be disqualified as a witness in any civil suit or proceeding prosecuted in the name of or against her husband, whether joined or not with her husband as a party, in the following cases, to-wit: First, in actions upon policies of insurance of property, so far as relates to the amount and value of the property alleged to be injured or destroyed; second, in actions against carriers, so far as relates to the loss of property and the amount and value thereof; third, in all matters of business transactions when the transaction was had and conducted by such married woman as the agent of her husband."

Mrs. Falor, wife of defendant, was, therefore, clearly not competent as a witness regarding the conversation she says she had with her father-in-law about the litigated sum of money, to the effect that he said, "I know Charley has that; I told him to keep that." This conversation she says took place with her father-in-law, she having been sent over there by her husband *as his agent* to explain to her father-in-law respecting different

amounts arising from sales of cattle; which amounts were deposited by her husband in bank in his father's name, and concerning which the father felt "worried."

From reading the statute, it is too plain for discussion that Mrs. Falor's testimony did not fall within either of the three categories which are therein specified. But when Mrs. Falor was introduced as a witness by defendant, she was asked this question:

"Q. I will ask you whether or not your husband authorized you, as his agent, to see Mr. Falor and arrange the matter in question with him?

"Counsel for plaintiff objects to question as incompetent."

It will be noted that this objection does not go to the competency of the *witness* but to that of the propounded *question.* There is a long shot's difference between the two questions. [Adair v. Mette, 156 Mo. 496.] And aside from that, such an objection is itself *"incompetent,"* because it states no grounds of objection. Merely saying a question or a witness or evidence is "incompetent, immaterial and irrelevant," amounts to nothing as this court has so often decided, "times and ways without number."

Further on in the introduction of Mrs. Falor's testimony, occurs this statement: "Counsel for plaintiff objects." Then shortly after that, after the witness had testified as already stated, occurs this passage: "Counsel for plaintiff objects to witness's testimony." But no ground is stated for such objection. It is true we have held that where the testimony is wholly inadmissible, in whatever shape offered, there, a general objection to it is sufficient. [Meyer's Case, 99 Mo. loc. cit. 120, and subseq. cas.] But while this is true, that such general objection is sufficient, yet it is only true when an exception is afterwards saved to the overruling of the general objection. From these recitals, remarks and reference to authority, it will

be seen that counsel for plaintiff are incorrect in making the following statement: "The testimony of Mrs. Charles Falor, the defendant's wife, was, we think, incompetent under the statute, and was objected to on that ground, but the court permitted her to testify." There was no reference made to the statute nor defendant's wife being incompetent under it.

5. Defendant having answered the interrogatories as he did, made out against himself a prima facie case; his admissions of facts in response to such interrogatories virtually converted his answers into a plea of confession and avoidance, and the burden was therefore on him to establish such avoidance. For this reason, the trial court did not err in holding, as just stated, and in requiring defendant to open the case. And the substantial issue to be tried therein was this question: *Did Elias Falor give the money in dispute to his son, Charles Falor?* The only testimony tending to uphold defendant's theory and assertion that the money he retained was a gift from his father, was that furnished by his wife. But there was also testimony of a contrary effect on the part of Tygard and others.

6. The instructions heretofore quoted, as given on behalf of plaintiff, are in accordance with the views above expressed and are correct. As to the one given for defendant, it is certainly very favorable to him. Relative to the instructions refused defendant, they were properly refused. There was no ground for a demurrer to the evidence. Nor was there any ground for stating that the proceeding was in the nature of a criminal proceeding. Under the views heretofore expressed, mere concealing property, coupled with the other charge of neglect and refusal to inventory, took away any taint of criminality the word "conceal" possessed, if it indeed possessed any such meaning. But granting it did, such meaning was entirely neutralized by the issue joined upon the interrogatories

and the answers thereto; which issue eliminated the word "concealed" from further consideration.

7. As to the jurisdiction of the probate court, over this matter, no doubt can be entertained, since the amendment made by the Act of 1881, aforesaid.

These considerations result in affirming the judgment. All concur.