GARRETT L. CARMODY, Administrator of Estate of JOHN L. CARMODY, Appellant, v. MARY A. CARMODY.

Division Two, January 6, 1916.

1. **EVIDENCE: Circumstance.** In a suit by an administrator against decedent's wife to recover bonds, which she claims as her own, testimony by an attorney that at a time certain decedent brought his wife to his office and stated the circumstance of a loss of bonds belonging to his wife and not in suit, is admissible as tending to show that at that time she owned and possessed bonds, and as a circumstance from which an inference may be drawn throwing some light upon the purpose for which both held a joint interest in the safety deposit box in which the bonds in suit were kept.

2. **ADMINISTRATION: Bonds In Widow's Possession: Instruction: Where She Claims as Purchaser.** In a suit by the administrator against decedent's widow to recover bonds in her possession, which she claims to own as a purchaser, and not as a gift from her husband, it is error to refuse an in-

struction declaring that if decedent, in his lifetime, purchased and paid for the bonds and they were delivered into his possession at the time of the purchase, the finding must be for plaintiff.

3. ———: ———: **Answers to Interrogatories: As Pleadings and Evidence.** In a suit by an administrator to recover bonds in the possession of decedent's wife claimed by her as the owner, the written interrogatories propounded to her for answer and her written answers thereto are to be considered merely as pleadings in the case, and the statements contained in said answers cannot take the place of testimony, but testimony should be offered upon the trial as in any other case.

4. ———: ———: ———: ———: **Waiver.** Nor does the filing of interrogatories in such a case constitute a waiver of the incompetency of the wife to testify to transactions between her and her deceased husband involving the cause of action and at issue.

5. ———: ———: ———: **Instruction.** In such a case an instruction declaring that the statements made in the answers to the interrogatories propounded by the administrator to the wife that are in her own favor are not competent as evidence, and do not tend to prove, nor can they be considered as tending to prove, that the wife owned or acquired by gift or purchase from her husband, or otherwise, any of the bonds, is a correct declaration of law, and being applicable to the facts should be given.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

REVERSED AND REMANDED.

*Johnson, Rutledge & Lashly, Holland, Rutledge & Lashly* and *Blevins & Jamison* for appellant.

(1) The evidence does not show that the bonds in issue in this suit were purchased with the money of Mary A. Carmody. Tygard v. Falor, 163 Mo. 234; Terry v. Glover, 235 Mo. 544. (2) It does not show a gift *inter vivos* between deceased and defendant. Keyl v. Westinghaus, 42 Mo. App. 57; Godard v. Conroy, 125 Mo. App. 174; Terry v. Glover, 235 Mo. 549. (3) Under the pleadings and the admitted facts, the finding and judgment should have been for the

plaintiff.   See authorities above.   (4)   The court
erred in admitting testimony by Thomas K. Skinker,
and in refusing to give declaration number 8 striking
said testimony from the record.   (5)   The court erred
in admitting the testimony of the defendant in her
own behalf.   Terry v. Glover, 235 Mo. 544; Tygard v.
Falor, 163 Mo. 235.   (6)   The court erred in refusing
to give declaration number 2.   The interrogatories and
answers merely constitute the pleadings in the case.
They were in no sense evidence in favor of the defend-
ant.   Tygard v. Falor, 163 Mo. 242; In re Estate of
Hoffman, 132 Mo. App. 63.

*Walter B. Douglas* for respondent.

(1)   The issue to be tried in this case is substan-
tially this:   Were the bonds here in question, or any
of them, the property of John L. Carmody prior to the
time of his death?   On this issue the administrator has
the affirmative, and, therefore, the burden of proof.
Tygard v. Falor, 163 Mo. 245.   (2)   The evidence
offered is insufficient to make out a prima-facie case
in favor of the administrator.   State v. Taylor, 134
Mo. 151; Gentry v. McReynolds, 12 Mo. 533; Coughlin
v. Ryan, 43 Mo. 99; Welch v. Welch, 63 Mo. 57; McCoy
v. Hyatt, 80 Mo. 130; Schooler v. Schooler, 18 Mo.
App. 77; Abbott v. Trust Co., 149 Mo. App. 514; Fair
v. Wynne, 155 Mo. App. 343; Hopper v. Hopper, 84
Mo. App. 120; Farwell v. Cramer, 38 Neb. 66; Gordon
v. Eans, 97 Mo. 600; Jackson v. Jackson, 10 Mo. 121;
Wheeler v. Wheeler, 43 Conn. 507.

WILLIAMS, C.—This is a proceeding originally
instituted in the probate court of the city of St. Louis,
under the provisions of section 70 et seq., Revised
Statutes 1909, whereby the administrator of the estate
of John L. Carmody, deceased, seeks to recover from

Mary A. Carmody certain assets which it is alleged that she is wrongfully withholding from the estate. The specific property in dispute consists of eleven one-thousand-dollar bonds of the State of Coahuila de Zaragoza, Mexico; two municipal bonds of Buchanan, Georgia, for three hundred dollars each. Mary A. Carmody is the widow of John L. Carmody. Pursuant to the citation, she appeared in the probate court and denied the allegations of the affidavit, whereupon interrogatories were filed and she answered the same under oath. Trial was had in the probate court, resulting in favor of Mary A. Carmody, and the administrator took an appeal to the circuit court of the city of St. Louis, and upon trial in the circuit court before the judge, sitting as a jury, judgment was entered in favor of the defendant and the administrator duly perfected an appeal to this court.

Answers were made to forty interrogatories and are quite lengthy. Sufficiently for the purposes here, we will state, in narrative form, the answers made to the interrogatories, as follows:

"My name is Mary A. Carmody and I am the widow of John L. Carmody. We were married in New York in 1867 and continued to reside together until the day of his death, July 30, 1908. At the time of our marriage, I had something less than one hundred dollars in money and my husband had three or four hundred dollars in money. The first year after I was married, my father, in Ireland, sent me seventy dollars and, in 1869, my husband gave me a Christmas present of one hundred dollars. The first year or so after our marriage, my husband was engaged in the hardware business in Cincinnati; then he ran a store for railroad contractors for four years; then he was a street car conductor for four years; then he ran a hotel for about a year; then he worked as a salesman in a post-trader's store at Fort Sill, Indian Territory, for

three years; then we lived on a ranch in Kansas for three years, raising stock; then for about seven years he ran a post-trader's store at Jefferson Barracks for Major McVean. He worked for about nine months for Garrett L. Carmody in a grocery store and also kept books for nine months for T. W. Scott. During all this time, the salary which he received was from thirty dollars a month, being the lowest salary received, to one hundred dollars a month, being the highest salary received. During seven years of our married life, I kept boarding house and from that source saved about eleven hundred dollars. What I saved was invested and the interest therefrom was also invested. For about nineteen years I collected rents for my husband, which amounted to about eighty or a hundred dollars a month, and I received three per cent for collecting the same.

"In 1868, my husband bought a bond at Covington for one hundred dollars, and after keeping it a few months sold it. He bought some bonds in 1876 at Fort Sill, but sold them and used the money to buy the Kansas ranch. In June, 1908, my husband bought two five-hundred-dollar bonds of the Knights of Columbus for 'something over one thousand dollars.' He bought the Knights of Columbus bonds from the Mercantile Trust Company. My husband did not own any bonds at the time of his death. He gave me the Knights of Columbus bonds. The Knights of Columbus bonds are now in possession of the administrator, but they belong to me. I have acquired bonds during the period of my marriage and have owned bonds for twenty-four years or more. Twenty-four years ago, I owned bonds amounting to three thousand dollars or thirty-seven hundred dollars. The proceeds of those bonds and the interest was reinvested until I now have eleven thousand dollars in bonds. For about fifteen years my husband had a safety deposit box at the

St. Louis Safe Deposit Company and later at the Mercantile Trust Company. I had access to the box, prior to my husband's death. At the suggestion of my husband, I took ten thousand dollars in bonds out of the box, in March, 1908, and carried them home and put them in the desk. He said that I had better take them out to avoid any trouble about getting at the box in case of his death. They are now in my possession. It is not true that the bonds were purchased by my deceased husband with his own means and funds. The bonds were bought with my means. My husband may have added at times some small amount of his own money to make up an even sum, but he never gave me any statement of how much and I never knew. In 1890 I lost some bonds, three thousand dollars or three thousand seven hundred dollars worth of bonds, and had to sue for the money. My husband used to manage my business for me. He would sell, trade and reinvest so it is impossible for me to recollect what I had in any particular year. At the time of my husband's death, I, individually, owned eleven Mexican bonds for one thousand dollars each, two Knights of Columbus bonds for five hundred dollars each, and two Georgia bonds for three hundred dollars each. I never directly purchased any of these bonds. My husband always attended to such matters for me. The following is a list of the bonds in my possession, under my control, at the time of my husband's death:

"Bonds of the State of Coahuila de Zaragoza, Mexico, dated April 1, 1900, payable April 1, 1940, interest 6 per cent, numbers 12, 146, 147, 206, 378, 379, 566, 639, 640, 641, 642, each for one thousand dollars; two bonds of the town of Buchanan, Georgia, for three hundred dollars each; two bonds of the Knights of Columbus for five hundred dollars each. The eleven Mexican bonds are now in my possession. The ad-

ministrator has possession of the Knights of Columbus bonds.''

The evidence upon the part of the plaintiff tended to establish the following facts:

John W. Donaldson, president of the John W. Donaldson Bond and Stock Company, testified that he sold John L. Carmody the following bonds: One lot of bonds of Mt. Pleasant Township, Bates county, Missouri; two bonds of Buchanan, Georgia, for three hundred dollars each, and one one-thousand-dollar bond, being bond No. 12, of the State of Coahuila, Mexico. That these bonds were paid for by Mr. Carmody, and were delivered to him at the time of his purchase, and that they sold the Mexican bond at a little above par. That the Mt. Pleasant Township bonds were afterwards lost, and witness introduced Mr. Carmody to Mr. Skinker and Mr. Skinker brought suit against the county to recover the money.

Mr. William H. Young testified that in 1905 and 1906 he was connected with the Noel-Young Stock Company and that his company sold the following bonds to John L. Carmody, to-wit: On December 28, 1905, bond No. 566 of the State of Coahuila, Mexico, the par value being one thousand dollars, bearing six per cent interest. It was sold above par, the exact price being 109. On June 18, 1906, two one-thousand-dollar bonds of the same kind, being numbers 146 and 147, were sold to Mr. Carmody. They were sold at 110. On May, 1908, a one-thousand-dollar bond of the same kind, being No. 206. It was sold at 107, plus interest. These four bonds were paid for by John L. Carmody and were delivered to him and a bill of sale of the same was made to John L. Carmody.

Walter A. Wilkinson, cashier of the bond department of the Mercantile Trust Company, testified that his company sold to Mr. Carmody, on April 26, 1905, one one-thousand-dollar Mexican-government four-per-

cent bond, at 94. The number of the bond was 7749, and that this bond was, on May 23, 1905, sent to New York to be exchanged for a permanent bond, No. 34374. Nine hundred and fifty-six dollars and eleven cents was paid for the bond. This same company, on May 6, 1908, also sold one thousand dollars worth of the Knights of Columbus building bonds to John L. Carmody; the two bonds were for five hundred dollars each and were numbers 82 and 84.

Joseph J. Reynolds, assistant manager of the Mercantile Trust Company safe deposit vaults, testified that from February 9, 1906, until September 30, .1908, safety deposit box No. 11339 *was rented jointly in the name of John L. Carmody and Mrs. Mary A. Carmody.* On September 30, 1908, at the request of Mrs. Carmody, John L. Carmody's name was erased from the records (this was after the death of John L. Carmody). This witness also testified that his records show that Mary A. Carmody had access to this box on March 23, 1908, and again on August 3, 1908. By access, the witness said he meant that "the person had visited the box."

The evidence upon the part of the defendant tended to establish the following facts:

Thomas K. Skinker testified that, in 1890 or 1891, John L. Carmody brought Mrs. Mary A. Carmody to his office and stated the circumstances of the loss of some bonds which he said belonged to Mrs. Carmody, but which had been lost. The bonds were the Mt. Pleasant Township bonds of Bates County. Suit was brought in the name of Mrs. Carmody and about $2500 was recovered for her. On cross-examination, the witness was interrogated about the depositions of John L. Carmody and Mrs. Carmody taken in the suit to recover on the lost bonds, in which Mr. Carmody testified that he made an outright gift of the bonds to Mrs. Carmody, and that if he needed the money to use in

any way, she would give the bonds back to him; and that Mrs. Carmody testified that when her husband first bought the bonds, "it was considered that they were mine."

Defendant offered in evidence the deposition of Father J. J. Godfrey. This witness testified that he received a letter from John L. Carmody inquiring if he should pay taxes on some money or property which the writer had laid aside for his wife. The letter was written about four years prior to the death of Mr. Carmody.

Walter B. Douglas testified that the plaintiff, administrator, upon the hearing of this cause in the probate court, testified that John L. Carmody, his brother, at one time bought for him a one-thousand-dollar four-per-cent Mexican bond, and that he gave his brother money to pay for the bond and that his brother kept the bond. Later he desired to sell the bond and his brother paid him back the money invested in the bond.

I.   It is contended that the court erred in admitting the testimony of Thomas K. Skinker. In this connection, it is urged that the bonds, **Evidence: Circumstance.** concerning which Mr. Skinker testified, are not the ones here involved, and hence his testimony is not material to the issues in the present suit. It is true that the bonds mentioned in the witness's testimony are not the ones now in issue, but we think the witness's testimony was admissible. It tended to show that, as far back as 1890, Mrs. Carmody owned and possessed bonds valued at $2500, or more, and we think it a circumstance from which an inference might properly arise throwing some light upon the purpose for which she held a joint interest in the safety deposit box which contained the present bonds. It is, of course, but a slight circumstance, but we think it was properly admitted in evidence.

II.   It is contended that the court erred in refusing to give appellant's declaration of law numbered 1. The substantial portion of this declaration was, as follows:

"The court declares the law to be that if the court, sitting as a jury, shall find from the evidence that the said John L. Carmody, deceased, in his lifetime, purchased all or any of the bonds from Noel-Young Bond Company or the Donaldson Bond & Stock Company or the Mercantile Trust Company and paid for the same and that said bonds were delivered into his possession at the time when he purchased them, then the finding will be for the plaintiff, and the defendant is guilty of wrongfully withholding from the estate of her deceased husband all of the said bonds which the court may find from the evidence were so purchased and paid for by the defendant's deceased husband."

*Rights as Purchaser.*

We are of the opinion that this declaration should have been given.   There was no issue in this case that Mrs. Carmody was the owner of the bonds in dispute, by reason of a gift from her husband, but her defense, as we gather it from the pleadings, was that she purchased and paid for the bonds when originally purchased, and that she was, therefore, the owner, as original purchaser. - The theory of the plaintiff was that these bonds, or at least some of them, were the property of the estate because John L. Carmody had purchased them and paid for them.

III.   It is further contended that the court erred in refusing appellant's declaration of law numbered 2. The main portion of this declaration was as follows:

"The court declares the law to be that the statements made in the answers filed by the defendant to

Interrogatories and Answers As Evidence. the interrogatories propounded by the plaintiff that are in her own favor are not competent as evidence, nor do they tend to prove, nor can they be considered by the court as tending to prove, that the defendant owned or acquired by gift or purchased from her husband, or otherwise, any of the bonds, the title to which is in controversy in this action. And the court, sitting as a jury, will not consider as evidence answers made by defendant in her own interest, but will exclude from its consideration such answers," etc.

We are of the opinion that the foregoing was a correct declaration of law, applicable to the case and should have been given.

In the case of Tygard v. Falor, 163 Mo. 234, it was held that, in proceedings of this kind, the issues to be tried are settled and definitely fixed by the interrogatories and the answers made thereto. That being true, the interrogatories and answers are to be considered merely as pleadings in the case, and the statements contained in said answers (excepting, of course, admissions or confessions therein contained against the interest of the person answering) could not take the place of testimony, but the testimony should be offered upon the trial of the case as in any other trial.

In the present case, Mrs. Carmody would not, of course, be a competent witness to testify to transactions between herself and her deceased husband, involving the cause of action or issue now on trial. [Sec. 6354, R. S. 1909.] And it was held in Tygard v. Falor, supra, that the filing of the interrogatories in a case of this kind did not act as a waiver of the incompetency as a witness of the person answering the interrogatories. The judgment is reversed and the cause remanded. *Roy, C.,* concurs.

PER CURIAM: The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. All the judges concur.