ED ROETHEMEIER, CHRIST ROETHEMEIER, HENRY ROETHEMEIER and ANNA VEITH, Appellants, v. JOHN VEITH.—69 S. W. (2d) 930.

Division One, March 14, 1934.

*Rex V. McPherson* and *Robert Stemmons* for appellants.

*E. C. Medlin* and *H. A. Gardner* for respondent.

HYDE, C.—This action was a proceeding in the probate court against respondent, as administrator of his deceased wife's estate, to compel him to inventory certain property as assets of said estate. Appellants' petition asking for this relief alleged that respondent "wrongfully withholds and conceals, and now has in his possession certain money and property of said estate of the value of eight thousand dollars, which he received from the proceeds of the sale of certain real estate belonging to said deceased, in her own right, and which he has wrongfully converted to his own use." Upon this petition, respondent was cited into the probate court, to answer appellants' written interrogatories. Respondent's answer to these interrogatories asserted his claim of ownership to the property inquired about. There was a jury verdict in the probate court that respondent wrongfully withheld the sum of $8,284 from his deceased wife's estate. Respondent appealed to the circuit court and, upon trial there, the jury returned a verdict for respondent. Appellants have appealed from the judgment entered upon that verdict.

The property about which the controversy arose was the proceeds of the sale of eighty acres of land, which, in 1915, respondent's deceased wife, Emma Veith, inherited from her father. Appellants are her brothers and sister. Respondent and Emma Veith were married in 1910 and had no children. This land was sold in 1921 for $8,000. One thousand dollars was paid in cash at the time of the sale. Respondent in his answers to appellants' interrogatories admitted that he received this money at the time of the sale and he made the following claim to it therein: "$1,000 was to compensate me for the money spent on Emma Veith's farm. . . . Returned to me $1,000 money that I had paid out on her farm in improving it." For the balance of the purchase price, the purchasers gave a $4,000 note secured by a deed of trust on the land purchased and a $3,000

note secured by a deed of trust on other land owned by them. Both notes were made payable to Emma Veith five years after date with six per cent interest. The $4,000 note was paid in full during the year it came due. There was paid on the $3,000 note in 1926 $200, in 1927 $200, and in 1928 $1200, leaving a balance due of $1400. There was also paid on each note prior to the death of Emma Veith in 1929 interest in excess of $1200, or a total of more than $2400 interest. Respondent inventoried the note with $1400 balance as belonging to his wife's estate and so stated in his answers to the interrogatories. It was shown, however, by respondent's own evidence that after his wife's death the original $3,000 note was released of record and a new note was made in renewal thereof payable to respondent himself before he was appointed administrator. Respondent's appointment was made ten months after his wife's death, when he was cited by the probate court upon a petition filed by appellants to compel administration.

Respondent claimed a verbal gift from his wife, not of the notes themselves but of all amounts collected upon both notes, prior to her death. These notes were held for safe-keeping, from the time they were made, by the cashier of the bank where both respondent and his wife transacted business, and all payments were made at the bank. This banker testified that he would give a receipt for these payments by signing respondent's name by himself; that the proceeds of all payments of principal and interest were deposited in respondent's name subject to his check; that Emma Veith never told him to do that and never talked to him about it; that the account was handled entirely by respondent; that it remained at all times in his name, and that respondent reloaned the money he thus received to other people. The banker further testified that Emma Veith in 1924 put $100 on time deposit in her own name; that she gradually increased this account each year so that it amounted to $180 at the time of her death; that she told him it was the proceeds of the sale of eggs and chickens; that there was no other account in the bank in her name; that she attended to renewing this time certificate each year; that she did not draw on the money that came from the sale of the farm, and that she never mentioned that to him or said anything to him about that at all. After his wife's death, the cashier allowed respondent to draw out the amount of the time deposit upon his guarantee to the bank against any loss by reason of having to repay it in case it came into court.

Upon the issue of the gift, respondent had the following evidence of declarations made by his deceased wife to witnesses on three separate occasions in the summer of 1928:

First: Respondent's sister-in-law, Mrs. Herman Veith, who told of the following conversation on a trip to Aurora to see a doctor who was treating Emma Veith: ''We were driving along, and like all

women do, we got to talking about things, getting things, what you might have and what you could have; and, I told her, 'If I had the money you have, I would get me anything that I wanted;' and, she says to me, 'Emma, I give my money all to John; whatever he does with it, it is perfectly all right with me.' . . . She told me she give all her money to John. She didn't say how much.''

Second: Jake Deschner, who testified to a conversation with Emma Veith while he was stacking wheat. on the place where they lived, as follows: ''It was rather dry, and looked like we were not going to have any corn; and, we talked that it would be pretty hard to get along; and, we told her she wouldn't have to worry about that, she had sold her place for a good price and John had plenty too; and, she said she gave what she got out of the place to John. . . . She said she gave what she got for the place to John. She was speaking about this eighty acres of land.''

Third: Mrs. Jake Deschner, who testified to a conversation about the same time, as follows: ''I told her she ought to buy a car; and, she said she hadn't, said John didn't care for a car and didn't think he would run it; and I told her she could buy her one; and, she said she didn't have that money anymore, she gave that to John. I had told her she had money from the farm; and, she said, no she didn't have that anymore. . . . She said she give John the money from her farm.''

These witnesses also testified that Emma Veith complained that her brothers and sister (appellants) did not visit with them or come to see them.

Upon the issue of the payment of the $1000 to respondent by his wife to reimburse him for improvements which he made upon her land, the only evidence (except respondent's own testimony) was that of Mrs. Herman Veith, who testified that respondent improved the land, after his wife got it, ''by building a house and painting a house and drilling a well,'' but she said she did not know who paid for the improvements. Respondent and his wife never lived on her land, which was rented and farmed by others, but lived with respondent's mother. There was no evidence to show what was done with the rents derived from Emma Veith's land. Respondent, himself, testified over appellants' objections as follows:

''Q. During the time you had it, John, tell the jury what you did and about *what you spent* on that land in the way of improvements until the time you sold it. (Objections) A. I drilled a well, put in a corncrib, fixed up the house, and painted. the house and painted all of the buildings. Q. Now, the digging of this well, did you hire some men to do that? (Objections) A. Yes; I hired somebody to drill it. Q. The improvements you put on there altogether would amount to what? (Objections) A. Amounted to nine hundred dollars, I guess in all, with the well and everything.''

■ In a proceeding of this kind the petition, interrogatories and answers thereto constitute the pleadings and settle the issues to be tried. [Tygard v. Faylor, 163 Mo. 234, 63 S. W. 672; Carmody v. Carmody, 266 Mo. 556, 181 S. W. 1148.] Two issues are raised by these pleadings:

First: Whether or not Emma Veith paid to her husband, for improvements made and paid for by him upon her land, the $1000 she received in cash when she sold her land in 1921.

Second: Whether or not Emma Veith made a gift to her husband of the amounts paid for principal and interest, between 1922 and her death, on the notes given for the balance of the purchase price of her land.

■ Since respondent's answers admitted that all of this money originally belonged to his deceased wife and that he received it, the burden was upon him to establish the facts which he alleged as an excuse for withholding it from her estate, namely: the payment and the gift, upon which he based his claim of ownership. [Tygard v. Faylor, 163 Mo. 234, 63 S. W. 672; Spencer v. Barlow, 319 Mo. 835, 5 S. W. (2d) 28.] Appellants contend that respondent's evidence was insufficient to establish either the payment to him of the $1000, or the gift to him of the rest of the money. Appellants offered separate instructions so declaring as to the payment and as to the gift, and assign as error the refusal of these instructions and the submission of these matters to the jury, and in this connection also claim that the court erred in allowing respondent to testify as hereinabove set out.

■ We hold that respondent was incompetent under Section 1723, Revised Statutes 1929, to testify, in his own behalf, that he made and paid for improvements on his wife's land. These were essential facts necessary to establish the transaction between respondent and his deceased wife by which he claimed that $1000 of her money became his and to prove which he had no other evidence. Under Section 1723, Revised Statutes 1929, the surviving party to the contract or cause of action in issue and on trial cannot testify concerning any transaction between himself and the deceased party, essential to the proof of such contract or cause of action, which might be questioned or denied by the deceased party thereto. [Tygard v. Falor, 163 Mo. 234, 63 S. W. 672; Carmody v. Carmody, 266 Mo. 556, 181 S. W. 1148; Elsea v. Smith, 273 Mo. 396, 202 S. W. 1071; Orr v. St. Louis Union Trust Co., 291 Mo. 383, 236 S. W. 642; Cloves v. Cloves (Mo.), 239 S. W. 145; Kling v. McCabe (C. C. A.), 36 Fed. (2d) 337.] It is apparent that respondent's testimony was about a transaction essential to the proof of a contract between himself and his deceased wife upon which he made his claim of ownership and which is the basic issue in the cause of action on trial here. To support his claim that this $1000 was a payment, it was necessary

for him to show that there was some obligation due to him from his wife to be paid. If he did not show that, he did not have sufficient evidence to warrant submission of the issue of a payment. In other words, it was necessary to prove that there was a consideration for the $1000 he received, in order to show that it was a payment. To do so, respondent had to show that he either made and paid for the improvements on his wife's land under an express agreement that she would repay him therefor (which he did not claim) or that he made and paid for them under circumstances from which a promise to repay him could be implied (which was the evident purpose of his testimony). Respondent's wife, if she had lived, would have had the right to deny any contract, express or implied, and so do those claiming under her. Therefore, respondent claiming that the money was a payment, which must mean that there was an obligation to be paid, was not competent to testify to the very transaction from which he claimed such an obligation arose.

It follows from what we have said that there was not sufficient competent evidence to justify the submission of the question of a payment. (We do not, however, decide that there was sufficient evidence if the facts to which respondent testified had been shown by competent evidence.) It was, therefore, reversible error to refuse appellants' instruction withdrawing this issue and to submit it to the jury.

■ Concerning the issue of a gift it is true that, as appellants contend, under Section 3003, Revised Statutes 1929, a husband cannot obtain title to his wife's personal property by merely obtaining possession of it. However, a wife can, of her own volition, transfer title to her personal property to her husband by parol gift. [Murphy v. Wolfe, 329 Mo. 545, 45 S. W. (2d) 1079.] To constitute a valid effective parol gift *inter vivos* there must be an intention on the part of the donor to transfer title immediately and absolutely, a delivery of the property, and an acceptance by the donee. [Trautz v. Lemp, 329 Mo. 580, 46 S. W. (2d) 135; Albrecht v. Slater (Mo.), 233 S. W. 8, and cases therein cited.] Where the donee already has possession, of the property given him, no further actual physical delivery is necessary, and where the gift is beneficial to the donee and imposes no burden upon him, acceptance will be presumed. [Gosney v. Costigan, 326 Mo. 1215, 33 S. W. (2d) 947.] Judging the evidence in the light of these principles, we hold that it was sufficient to warrant the submission to the jury of the issue of a gift from Emma Veith to respondent of all of the money collected prior to the time of her declarations concerning the gift, which the evidence tends to show she made in the summer of 1928.

■ Appellants contend that the evidence of a gift consisted merely of declarations of respondent's deceased wife; that all the essential elements of a gift cannot be proven by declarations alone;

but that there must be other supporting evidence to warrant a submission to the jury. Declarations, alone, do not overcome conduct inconsistent with having parted with possession and control. [See 28 C. J. 681, sec. 87; 12 R. C. L. 973, sec. 45.] There was here, however, other corroborative evidence tending to show a gift. It was shown that all payments of both principal and interest between June, 1922, when the first payment was made on the notes, and June, 1928, the date of the last payment before Emma Veith's death in January, 1929, were deposited in the bank in respondent's name by the cashier who collected them; that respondent checked this money out and reloaned it to other people as his own money; that for the last five years of this period Emma Veith had a separate account of her own; and that, although she was in the bank frequently and consulted the cashier about that account, she never mentioned respondent's account or said anything to him about the payments on the notes and did not draw on respondent's account. Moreover, her declarations could reasonably be construed as not merely indicating an intention *to give* the money to respondent but that she *had given* it to him and that the money no longer belonged to her. Furthermore, they were made after her health had failed. In other words, they tended to show a completed transaction at a time when it might reasonably be expected that she would be making a disposition of her property, and the conduct and course of dealing between her and respondent was not inconsistent with a gift. Appellants argue the policy of permitting a husband to obtain his wife's money on this evidence, but this court has said: ''In these cases where there are only collateral heirs—no children for whom the donor or testator is responsible for being in the world—there is no inclination on the part of the courts to look sourly on the preference or exclusion of one collateral relative over the other, as he is under no legal or moral obligations to divide it equally amongst his relatives.'' [Curtis v. Alexander (Mo.), 257 S. W. 432.] This is certainly also true of the preference of a husband by a wife or a wife by a husband over collateral heirs. We think the best policy is to leave each case to the judgment of a jury where there is substantial evidence of such a disposition of property.

While this case must be reversed and remanded because of the error in submitting the issue of payment, we think that appellants also have a just complaint about respondent's main instruction submitting the issue of a gift. This instruction was as follows:

''The court instructs you that in law a delivery is necessary to complete a gift, either actual or constructive, but if you find and believe from the evidence in this case that *the money in question was paid and delivered to John Veith* and by him deposited in the Bank of Hoberg in his own name, and that he already had said money in his possession and under his control at and prior to the time of the

alleged gift thereof to him, if any, by his said wife, then you are instructed that it was not necessary for him to turn said money back to his wife and for her to redeliver same to him in order to complete the gift.

"Therefore, if you find and believe from a preponderance of the evidence that at and prior to the time of said alleged gift, if any, the said John Veith had said money in his possession and control (then the only thing necessary to constitute a gift of said money under said circumstances from Emma Veith to her husband was an intent on her part to give the same to her said husband clearly and unequivocally expressed by her to the said John Veith, and that he thereupon accepted said money as a gift and thereafter retained the control and possession thereof as his own), then your verdict must be for the defendant." (Italics and parenthesis ours.)

It will be noted that, while the part in parenthesis purports to state the essential requirements of a gift, it nowhere definitely requires the jury to make a finding of them in order to find for respondent. Moreover, we think this instruction was confusing and misleading and tended to give the jury an erroneous idea of the issues and what they were required to find before they could find a gift in this case. The statement that they might find that "the money in question was paid and delivered to John Veith" is not in accord with respondent's theory of the case, which was that the notes were never given to him but at all times remained the property of Emma Veith; that they were left at the bank for collection; and that all payments were made to the cashier. The money was, therefore, not paid to John Veith but to bank for Emma Veith. It was her money, not his, when it was paid just as the notes were always hers. It is true that after the money was paid, it was deposited in respondent's account and that the evidence sufficiently tends to show that she permitted him to keep it that way, because under the circumstances she must have known about it. But that alone, no matter how long it continued, did not make it respondent's money. [Sec. 3003, R. S. 1929.] Some further definite act of Emma Veith's was necessary to pass title to him. There must have been such words and acts on her part, either at the time each payment was made or after all the payments were made, which would have been immediately effective to transfer the absolute title to respondent so that he could have asserted it even against her. While we have held that the jury could find that there had been such words and acts on her part as would pass title to him, from her declarations and the corroborating circumstances (such an inference could be fairly and reasonably drawn therefrom), nevertheless, the main instruction authorizing a verdict for respondent should definitely and clearly require the jury to find that these things had actually occurred. If the declarations of Emma Veith should be considered by the jury

(as we think they could find) as merely indicating a state of mind or a future intention to give it or that a gift to become effective in the future, respondent would not be entitled to a verdict. The instruction should therefore make it plain to the jury that only a completed immediately effective transfer of title to the money. after it was put in the bank in respondent's name and before the time it is claimed Emma Veith made the declarations about giving it to him, would establish a gift to respondent. On a retrial the main instruction authorizing a verdict should be redrawn to clearly require a finding of these essential facts necessary to establish a gift and to hypothesize only matters which are supported by substantial evidence. Furthermore, if the $1000 is still claimed as a payment. respondent's instructions should not, as they did here, ignore that matter and authorize a verdict for him as to all the money he received on the theory of a gift. Respondent must establish his title to the $1000 on the allegations of his pleadings (a payment) and cannot do so upon the theory it was also a gift, which is contrary to his pleadings.

We find no fault, however, with respondent's instruction concerning the burden of proof criticized by appellants, which stated that a gift may be proved by circumstances and that the jury "may take into consideration all the facts and circumstances surrounding the said Emma Veith and John Veith, together with her relations to and feeling for or against the parties to this litigation."

The judgment is reversed and the cause remanded. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.,* absent.