**REIDINGER et al.   v.   ADAMS et al.**

No. 43793.

Supreme Court of Missouri

Division No. 2.

April 12, 1954.

Samuel Richeson, Potosi, N. Murry Edwards, St. Louis, for appellants.

Wm. R. Edgar, Parke M. Banta, Ironton, for respondents.

BOHLING, Commissioner.

This is a suit to set aside the last will and testament of Frank Walser, deceased, for want of mental capacity and the exercise of undue influence. The contestants (plaintiffs-appellants) are Jessie Reidinger and other next of kin, first cousins of testator. The proponents (defendants-respondents) are Mae Dorritt Adams, the beneficiary under, and Ralph Keith, the executor named in the will. The jury upheld the will. The contestants appeal and contend error was committed in the giving of instructions and that certain witnesses were incompetent to testify.

Testator's estate embraced real and personal property, valued at approximately $15,000, and the case involves title to real estate.

Frank Walser died July 6, 1951, at the age of sixty-three years. He made Mae Dorritt Adams, a non-relative, his sole beneficiary and named Ralph Keith as executor of his estate. His will is dated June 2, 1951, and was probated July 10, 1951. Mr. Keith qualified as executor.

Frank Walser lived in St. Louis and worked for the Missouri Pacific railroad. He started acquiring real estate in Iron county, Missouri, about 1935 or 1936. By the middle of 1948 he had retired on a pension and moved to his farm in Iron county to live.

R. O. Adams, the husband of proponent Mae Adams, operated the Commercial hotel at Ironton. Mr. Walser would come to the hotel when in Ironton and on occasions stay for the week end. He stayed at the hotel during the winters of 1949–1950 and 1950–1951. He suffered from a heart ailment. Ruben Sullivan, who helped Mr. Walser on his farm, took him to Ironton on May 17, 1951. Mr. Walser consulted Dr. George W. Gay, who diagnosed his condition as angina pectoris and sent him to the Ironton hospital on May 18th. Mr. Walser was discharged from the hospital on May 25th. He returned to the Commercial hotel, where he continued under the care of Dr. Gay for approximately three weeks.

Someone telephoned to Mrs. Ralph Keith that Mr. Walser wanted to see her husband. Mr. Keith went to the hotel and Mrs. Adams told him Mr. Walser wanted to see him and directed him to Mr. Walser's room. She did not say anything further or enter the room. Mr. Walser told Mr. Keith he had a number of cousins whom he had not seen in years and who meant nothing to him; that Mr. and Mrs. Adams had been kind to him and he wanted to leave his property to Mrs. Adams. He also talked about deeding his real estate to Mr. Adams, reserving a life estate for himself. He decided not to do so at the time, but to will his property to Mrs. Adams. He asked Mr. Keith to serve as executor. He told Mr. Keith what property he owned.

Mr. Keith, who was a court reporter, made notes of what Mr. Walser told him. He took the notes to his father, a practicing attorney, who dictated the will and Mr. Keith typed it. On June 2, 1951, Mr. Keith took the will to Mr. Walser, who asked him to secure witnesses to the will. Mr. Keith went out of the room, found W. Z. Miller and asked him to be a witness. Not finding anyone else, he told R. O. Adams Mr. Walser had a paper that needed some witnesses. After waiting for someone to come in, he asked Mr. Adams if he knew anyone he could get, and Mr. Adams went across the street and returned with

his brother, K. L. Adams. Mr. Keith, Mr. Miller and Mr. K. L. Adams then went to Mr. Walser's room where Mr. Keith read the will in the presence of the four men, and Mr. Walser executed it, and Messrs. Miller and K. L. Adams witnessed it at his request.

Mr. Miller and Mr. K. L. Adams, the attesting witnesses, also testified to the due execution of the will in the instant proceeding. Other witnesses corroborated Mr. Keith's testimony about Mr. Walser's cousins' lack of interest in him and his desire to leave his property to Mrs. Adams.

Mr. Walser was admitted to the Veteran's hospital at Poplar Bluff, Missouri, about June 12, 1951, where he remained until his death.

The probative evidence on the issue established that Mr. Walser was a man of average intelligence and mentally competent.

Proponents' instruction No. 3, after defining "undue influence" as it many times has been defined, continues: " * * * and such undue influence, to be effective in breaking a will, must have been present, in active exercise, and sufficient to destroy the free agency of the testator at the time of making the will, so that the will is not in fact his own will but that of the party who was exercising the undue influence, and no amount of advice, suggestion, persuasion or influence which comes short of such effect will amount to undue influence."

■ Contestants say the instruction is erroneous in that it informed the jury that undue influence to invalidate a will must be exercised at the time of the execution of the will.

The criticised part of the instruction in Kaechelen v. Barringer, Mo.Sup., 19 S.W. 2d 1033, 1038[14–16], told the jury in substance that, before it could find that the will was the product of undue influence, it must find "that defendants or either of them, at the time and in the very act of making and subscribing said purported will, had and actually exerted such an influence

over [testator] as amounted to overpersuasion, coercion, etc." This was considered erroneous because it was calculated to mislead the jury into believing that a will was not to be set aside for undue influence "unless such influence was exerted or exercised on the day and at the time the will was executed." The court had in mind as disclosed by its statement and the supporting authorities (Mowry v. Norman, 204 Mo. 173, 193, 103 S.W. 15, 20) that under the instruction the overt acts of undue influence required the presence of the person exercising such influence at the time or on the day of the execution of the will. Reference to the record in Clark v. Powell, 351 Mo. 1121, 175 S.W.2d 842, 849[21] (the other authority cited by contestants), shows that refused instruction four was to like effect.

The subject of the quoted clause of the instant instruction is the "undue influence," which "must be present, in actual exercise," at the time of making the will, and not the presence of the person and overt acts of undue influence by him at such time. 1 Underhill on Wills, pp. 187, 188 (cited in the Kaechelen case, supra) speaks of the "exercise of undue influence." The term is used in the instruction in the sense that the undue influence is in *operation,* perhaps the better word, to the extent stated in the first part of the instruction for a verdict against the will on the ground of undue influence. Cases, prior and subsequent to the Kaechelen case, have stated the law on the instant issue as stated in proponents' instruction. Beckmann v. Beckmann, 331 Mo. 133, 52 S.W.2d 818, 823[6]; Walter v. Alt, 348 Mo. 53, 152 S.W.2d 135, 143[15]; Baker v. Spears, 357 Mo. 601, 210 S.W.2d 13, 18[5]; State ex rel. Smith v. Hughes, 356 Mo. 1, 200 S.W.2d 360, 363[4]; Rapp v. Rapp, Mo.App., 238 S.W.2d 80, 91[5].

Moreover, one of contestants' verdict directing instructions was to like effect. It stated that if testator's mind was subject to the domination and control of the proponents, and that they "unduly exercised such domination, power or influence over the mind and will of said testator, Frank Walser, at the time of the execution of

such paper writing dated June 2nd, 1951" etc. Kaechelen v. Barringer, supra, 19 S.W.2d loc. cit. 1039[16]; Spencer v. Quincy, O. & K. C. R. Co., 317 Mo. 492, 297 S.W. 353, 357[12]. The point is not well taken.

■ Contestants say the court erred in permitting Ralph Keith, the executor named in the will, to testify because he was disqualified under the dead man's statute, § 491.010, relating to witnesses. (Statutory references are to RSMo 1949, and V.A. M.S.) Among the cases cited are: Butler v. Walsh, Mo.App., 235 S.W.2d 826, 832 [1, 2]; Wagner v. Binder, Mo.Sup., 187 S.W. 1128, 1151[17–22]; Geisendorfer v. Geisendorfer, Mo.App., 227 S.W.2d 470, 473[3]; Bieber's Adm'r v. Boeckmann, 70 Mo.App. 503, 506; Weber v. Jones, 240 Mo. App. 914, 222 S.W.2d 957, 962[6]; Tygard v. Falor, 163 Mo. 234, 243(3), 63 S.W. 672, 674(3); Norton v. Lynds, Mo.App., 24 S.W.2d 183, 186[6]; Roethemeier v. Veith, 334 Mo. 1030, 69 S.W.2d 930, 933[3]; Pearson v. Murray, 230 Mo. 162, 167(IV), 130 S.W. 21, 23(4).

Section 491.010, so far as material, provides that where one of the original parties to a contract or cause of action in issue and on trial is dead, "the other party to such contract or cause of action shall not be permitted to testify either in his own favor * * *."

None of contestants' cases involved a will contest.

Under § 468.360 of the statutes relating to wills, as it appeared in R.S. 1889, § 8903, a legacy or devise or appointment to one who attested a will was rendered void, but if such legatee or devisee was entitled to share in the estate if the will be not established, he was, under § 468.370, nevertheless entitled to receive his distributive share of the estate to the extent of the bequest or devise.

In 1899, Laws 1899, p. 367, the following proviso was added to § 468.360: "* * * provided, that this section shall not prevent the executor named and appointed in such will from acting and qualifying as

such executor under the will, and further from being admitted as a witness to its execution, in probating the same; provided, such executor has no devise, legacy, estate, interest or gift in such estate or will, other than his appointment as executor."

Garvin's Adm'r v. Williams, 1872, 50 Mo. 206, 212, in holding the dead man's statute, § 491.010, did not apply in a will contest pointed out that proceedings to establish or invalidate a will were in the nature of a proceeding *in rem* (see also Campbell v. St. Louis Union Trust Co., 346 Mo. 200, 139 S.W.2d 935, 937[8], 129 A.L.R. 316), and stated: "The heirs at law and devisees are made nominal parties, but in truth the proceeding is *ex parte* and all are competent witnesses." See Gamache v. Gambs, 1873, 52 Mo. 287, 290.

Sections 468.360, supra, 468.380 and 468.-400 of the statutes relating to wills were before the court in Miltenberger v. Miltenberger, 1883, 78 Mo. 27, 30(2). In holding the legatees in the circumstances there presented were not competent witnesses to the execution of the will, the court said: "The sections of the act in relation to wills may be read as exceptions to section 1 [now § 491.010, supra] of the act in relation to witnesses, and this admits legatees and devisees to testify in any issue in a case of contest, except that in relation to the formal execution of the will." Consult § 491.-040.

Subsequent to the proviso (quoted supra) of 1899 to § 468.360, it was considered in Hogan v. Hinchey, 1905, 195 Mo. 527, 534, 94 S.W. 522, 523, that the mere fact that one was named as executor did not disqualify him as a witness on the execution of the will. See Berkemeier v. Reller, 317 Mo. 614, 296 S.W. 739, 741, 744[12]. Contestants' cases do not rule the instant issue.

■ Mrs. Adams, the sole beneficiary under testator's will, identified defendants' exhibits Nos. 5 and 6 as being envelopes and letters written in testator's handwriting. Contestants say she was an incompe-tent witness to identify said exhibits. They again rely on cases involving disqualifications of witnesses under § 491.010. In re Reichelt's Estate, Mo.App., 179 S.W. 2d 119, 122[5]; Bieber's Adm'r v. Boeckmann, supra; Wagner v. Binder, supra and Miltenberger v. Miltenberger, discussed supra. A witness who is disqualified under the dead man's statute may nevertheless testify as to the deceased's handwriting. Stephenson v. Stephenson, 351 Mo. 8, 171 S.W. 2d 565, 568[4, 5]; Simmon v. Marion, Mo. App., 227 S.W.2d 127, 131[4]. She was not offered to prove the execution of the will and the point is disallowed. Garvin's Adm'r v. Williams, supra; Gamache v. Gambs, supra; Norris v. Bristow, 358 Mo. 1177, 219 S.W.2d 367, 371[10], 11 A.L.R.2d 725, second appeal, 361 Mo. 691, 236 S.W.2d 316, 319[6], 26 A.L.R.2d 366.

■ Our examination of proponents' instructions does not disclose reversible error for undue and improper repetitions. Proponents' instructions presented their view of the issues. Some presented the converse of contestants' instructions. Repitition or elaboration of the same proposition in instructions rests within the discretion of the trial court and ordinarily is not grounds for reversal. State ex rel. Kansas City v. Shain, Mo.Sup., 177 S.W.2d 511, 513[7]; Mueller v. Schien, 352 Mo. 180, 176 S.W.2d 449, 454[18, 19]; Wright v. McDonald, 361 Mo. 1, 233 S.W.2d 19, 25[12], and Arnold v. Alton R. Co., 343 Mo. 1049, 124 S.W.2d 1092, 1095[7], cited by contestants.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.

WESTHUES, C., not sitting.

BARRETT, C., concurs.