In re Estate NANCY CLINTON; THOMAS F. CLINTON et al. v. JOHN M. CLINTON et al., Appellants.

**Division One, November 27, 1909.**

1. **SUIT: To Discover Assets.** A proceeding under Secs. 74 to 78, R. S. 1899, begun by one interested in the estate, by an affidavit filed in the probate court, alleging that the administrator has in his possession certain moneys and assets belonging to the estate which he has not inventoried, and praying that he be compelled to inventory them, is a suit or action, within the meaning of the law.

2. ————: ————: **Appellate Jurisdiction.** And being a suit, the appellate jurisdiction from an order dismissing it, is fixed by the amount and value of the property alleged to be concealed or withheld by the administrator.

3. ————: ————: **Involves Property Rights.** A suit against the administrator, begun in the probate court by affidavit and interrogatories to compel him to inventory certain assets of the estate, which the affidavit alleges he has concealed or withheld, involves property rights, and cannot be dismissed upon the filing of his answers to the interrogatories and his motion to dismiss. It cannot be dismissed while the issue as to the ownership of the property is undetermined.

4. ————: ————: ————: **Pleading: Reply.** A reply to the answers to the interrogatories in a suit to compel the inventory of assets filed in the probate court, should be permitted as sharpening and shortening the real issues.

Appeal from Clay Circuit Court.—*Hon. J. W. Alexander,* Judge.

REVERSED AND REMANDED (*with directions.*)

*Sandusky & Sandusky, J. M. Callahan* and *D. C. Allen* for appellants.

(1) A clear perception of the attitude of the parties in this matter removes all difficulties as to parties and pleadings. Who are attacking? The appellants. Who are defending? The respondents. *Pro hac vice,* then, in real substance, as to all issues presented by appellants' affidavit of concealment appellants occupy the attitude of administrators of the estate, and respondents that of concealers. On those issues, appellants are for the estate and respondents are against it. As a consequence, the relation of plaintiffs and defendants has existed between appellants and respondents from the moment the affidavit of concealment was filed. Pending the prosecution of those issues (and, within their scope) the function of administration was in appellants and not in the statutory administrator and administratrix. (2) Throughout the contest in this matter the administrator and administratrix have constantly claimed that, from the filing of their answer to the interrogatories, the case could not proceed further without their consent; that they refused to consent; and that, without their consent, neither the probate, nor circuit court had any jurisdiction to hear the matter. Under this claim, they moved a dismissal of the matter (and the motion was sustained) in each of those courts. This claim is manifestly repugnant to a fundamental maxim of the law —*nemo debet esse judex in propria sua causa.* Broom's Legal Maxims (3 Am. Ed.), p. 109; R. S. 1899, sec. 75; In re Estate Huffman, 132 Mo. App. 44; Tygard v. Falor, 163 Mo. 234. (3) Section 78 is a remedy in-

jected into art. 4, chap. 1, R. S. 1899, without adjustment with precedent sections. But it is a remedy—a most important one—and must be construed with reference to its meaning, force and breadth. The intent of the law is the pole-star of interpretation. We must give the section an equitable interpretation. It is a grant of right and power to persons interested—against the executor or administrator—and carries with it all modes and proceedings to make the grant effective. This is the universal principle of interpretation. The grant is intended to be efficacious and beneficial, and all incidental powers and remedies go with it. Construing section 78 upon this principle, any pretended right of the administrator or administratrix in this matter, to stop the proceedings, at their own "sweet will," is cut up by the roots. Eyston v. Studd, 2 Plowd., pp. 465, 466, 467; Springfield v. Railroad, 4 Cush. 63; Riddick v. Walsh, 15 Mo. 519; Potter's Dwarris, 339 et seq.; Story on the Constitution (5 Ed.), sec. 400, p. 305; Endlich on Interpretation of Statutes, secs. 1, 2, 8, 258, 295. (4) The contest in this matter between appellants and respondents is an action or suit within the meaning of the statutes and common law of Missouri. Tygard v. Falor, 163 Mo. 234; Ex parte Gfeller, 178 Mo. 248; Eckerle v. Wood, 95 Mo. App. 378. This being a suit or action, under not only the statute law of Missouri, but of the common law of the State, appellants were entitled to be permitted to file their reply to respondents' answers. Where there is an absence of directions as to pleadings under the Code, common law and equity govern in matters of pleading. Tucker et al. v. Insurance Co., 63 Mo. 588; Neenan v. St. Joseph, 126 Mo. 89. The probate court is a court of record. Constitution 1875, art. 6, sec. 34. The Revised Statutes 1899, sec. 288, say that probate courts shall be governed in all things by the provisions of chapter 1, "so far as they may be applicable to their jurisdiction and duties." Our Code

of Pleading (sec. 608) provides that if the answer of the defendant contains a statement of "new matter," and the plaintiff fails to reply or demur to it, the new matter will be taken as confessed, and the defendant have such judgment as he is entitled to upon such statement. Sections 74, 75, 76, 77 and 78, R. S. 1899, are silent as to a reply. Section 608 is not silent, but gives a penalty if there be no reply. Evidently the case, in right of action and pleadings, is made up of sections 74 to 78, both inclusive, plus section 608. Section 591, of our Code of Pleadings, says that the forms of pleading in civil actions in courts of record, and the rules of their sufficiency are to be determined by article 5, except as otherwise provided by law. Sections 288, 591 and 608 are *in pari materia,* and must be construed together. Giving section 608 its effect in this union, it follows that a reply was necessary in this matter. The reply is plaintiffs' avoidance or denial of the answer or defense, and takes issue with new matter in the answer. Good pleading requires a reply. Story's Equity Pleading (6 Ed.), sec. 877. This procedure, in its general idea, is closely analogous to the old, equitable proceeding in discovery. A bill of discovery was a mode of ascertaining the truth or existence of facts when concealed by the opposite party. The analogy in pleading follows. Story's Equity Pleading (6 Ed.), sec. 311. Appellants may, therefore, justly claim that manifest error was committed against them in both of the courts below in not allowing them to file their reply; and that no argument can be drawn from the fact that attorneys failed to make the point as to a reply in any case that may be cited.

*H. F. Simrall* for respondents.

(1) The proceeding authorized by sections 74 and 75, R. S. 1899, is an extraordinary remedy which is not to be employed in other cases and for other purposes than those which are clearly within the act.

It was intended in a summary manner, without expense or delay, to take from a person embezzling or concealing the effects of a deceased person, the articles actually in his possession, and turn them over to the representative of the deceased. Dameron v. Dameron, 19 Mo. 317; Stewart v. Glenn, 58 Mo. 481. (2) These sections provide a summary remedy for the recovery of specific articles of property owned by the decedent at her death. Under these sections no inquiry into transactions and business dealings with decedent years before her death can be had. Neither the affiant for citation nor the interrogatories propounded describe any specific articles of property, but seek to delve into minute business transactions carried on by decedent sixteen years prior to her death. In other words, appellants seek by this extraordinary remedy to establish a debt against these administrators. This was never intended and cannot be done. Stewart v. Glenn, 58 Mo. 481; Brotherton v. Spence, 52 Mo. App. 664; Dameron v. Dameron, 19 Mo. 317; Howell v. Howell, 37 Mo. 124. (3) Even if every one of the wrongful acts attributed to these administrators by appellants' interrogatories was true; only a court of equity, aided by a referee, could investigate and pass on the matter. The probate court has no equity jurisdiction. If anything of this kind has been done by these administrators during the lifetime of decedent, it is hopelessly mingled with their own property and these statutes were not intended for cases of this kind. Hook v. Dyer, 47 Mo. 214. (4) Even if this proceeding were the proper remedy the proceeding cannot be maintained unless the administrators consent. R. S. 1899, sec. 75; Brotherton v. Spence, 52 Mo. App. 664; In re Estate of Stewart, 67 Mo. App. 61; Hochu v. Struttman, 71 Mo. App. 399. (5) Administrators waived nothing by answering the interrogatories. No oral examination was asked or had by court or appellants. The interrogatories were filed five days before the day

administrators were cited to appear. The interrogatories were the first thing presented to the administrators. They were compelled to answer them or risk being committed to jail. R. S. 1899, sec. 76. Waiver can alone arise as the result of a voluntary act and not as the result of one which the law commands to be done as a means of procedure in court. Tygard v. Falor, 163 Mo. 223.

GRAVES, J.—The appellants and respondents are the heirs at law of Nancy A. Clinton, who died intestate, August 22, 1903, in Clay county, Missouri. Mrs. Clinton seems to have left in land and other property an estate of considerable proportions. On August 28, 1903, respondents, Thomas F. Clinton and Mary A. Clinton, were appointed by the probate court of Clay county administrator and administratrix of said estate, and qualified as such. Respondents for years, as alleged, had lived with the mother and had been her agents in the transaction of business.

On April 16, 1906, J. M. Clinton, for himself and as agent for his co-appellant, filed in the probate court of Clay county an affidavit charging the respondents with the concealment of assets of the estate. The material clauses of this affidavit read:

"And affiant further says that Thomas F. Clinton, Administrator, and Mary A. Clinton, Administratrix, of the estate of said Nancy A. Clinton, deceased, as this affiant has good cause to believe, and does believe, have concealed and are now concealing, and have failed and refused, and are now failing and refusing, to inventory and account for, according to law, or are otherwise wrongfully withholding, certain goods, chattels, money, books, papers or evidences of debts of said deceased, and now have the same in their possession or under their control, to-wit:

"1. The sum of nine thousand five hundred dollars (as this affiant verily believes), collected as rents

at various times and in various amounts, and of various persons, from the farm in Clay county, Missouri, containing three hundred and twenty acres, commonly called the 'Martin A. King Farm.'

"2. Rents on the home place in Liberty, Clay county, Missouri, or the reasonable value of the use thereof, during the period extending from Aug. 22nd, 1903, to this day, aggregating six hundred and forty dollars.

"3. Cash derived from various sources (but belonging to said estate), other than the rents above stated, but the amount of which affiant cannot definitely state, though he believes it to be a very considerable amount.

"4. Sundry items of personal property, consisting in part of a horse, cow, carriage, harness, and household and kitchen furniture, reasonably of the aggregate value of five hundred dollars.

"Wherefore, affiant prays said probate court to issue its citation to said Thomas F. Clinton, and Mary A. Clinton, citing them to appear before said probate court, at its May term, 1906, then and there to true answer make to the interrogatories that affiant and said James H. Clinton, or any person or persons interested in said estate, shall exhibit to them, and file in said matter, and otherwise to make answer to such citation as the law provides."

In obedience to this affidavit citation was duly issued on the same day and return thereof made for May 19, 1906, being the 6th day of the probate court of said county for the May term thereof. Later and within proper time thirty-eight interrogatories were duly filed with said court by appellants.

On June 18th and during said May term of said court respondents filed their written answers thereto. These written answers were fully denied, practically *seriatim,* in a reply tendered to the probate court by appellants and in which they renewed their claim in

their affidavit contained, that defendants were secreting large credits due to said estate, to-wit, from $12,000 to $15,000, and closed their denial or reply thus:

"And wherefore, plaintiffs pray the court for all such judgments, decrees, reliefs, proceedings and directions as are proper and warranted by law under the interrogatories, answers, this reply, and the evidence which shall be taken in said matter. And plaintiffs pray for all other reliefs in the premises."

The probate court refused appellants the privilege of filing this reply to the answer, and on motion of respondents they were discharged from said proceeding and permitted to go hence without day, with their costs therein expended.

By the judgment, execution was likewise ordered.

From this judgment, an appeal was granted by the probate court to the circuit court. In the circuit court, the appellants again tendered, by written motion, the same reply which the probate court had denied them the right to file.

Later in the circuit court, the present respondents moved said court to dismiss the appeal by motion couched in this language:

"1. Because the probate court had no jurisdiction to proceed any further after said administrator and administratrix had filed their answers to the interrogatories propounded to them.

"2. Because the said administrator and administratrix had never consented, and do not now consent, that any further proceeding in this matter be had after the filing of their answers to said interrogatories.

"3. Because neither the probate court nor this court on appeal therefrom has any jurisdiction to hear, try or determine the pretended issues attempted to be raised by appellants."

This motion the circuit court sustained. Appellants then filed their motion in arrest of judgment, which was likewise - overruled.

An appeal was granted by the circuit court to the Kansas City Court of Appeals, from which court the appeal has been certified here, upon motion of appellants challenging the jurisdiction of that court on account of the amount involved. Respondents still contend that the jurisdiction is with the Court of Appeals.

We have therefore two questions, (1) as to our jurisdiction and (2) as to whether or not there was error in the action of the circuit and probate courts of Clay county in refusing to allow a reply to be filed, issues made and a trial upon such issues. Our first inquiry must be as to our jurisdiction and afterwards to the merits, if we find jurisdiction here.

This states the case sufficiently for a disposition of the question involved.

I. If this is a suit or action within the meaning of the law, then there can be no question that the Kansas City Court of Appeals was right in certifying the case here, for the amount involved in the inquiry exceeds ten thousand dollars. The statutes are not as plain as they might be, and those involved here are:

"Sec. 74. If the executor or administrator, or other person interested in any estate, file an affidavit in the proper court, stating that the affiant has good cause to believe and does believe that any person has concealed or embezzled, or is otherwise wrongfully withholding any goods, chattels, money, books, papers or evidences of debt of the deceased, and has them in his possession or under his control, the court may cite such person to appear before it, and compel such appearance by attachment.

"Sec. 75. If the party so cited does not admit

the allegations in the affidavit, he shall be examined under oath, after which, at the instance of the administrator or executor, other witnesses may be examined both for and against such party; but before such other witnesses shall be examined, interrogatories shall be filed in writing, to be answered also in writing by the parties cited.

"Sec. 77. The issue upon the interrogatories and answers thereto shall be tried by a jury, or if neither of the parties require a jury, by the court, in a summary manner, and judgment shall be rendered according to the finding and for costs, and if convicted the court shall compel the delivery of the property detained by attachment of his person for contempt, and the court shall commit him to jail until he comply with the order of the court.

"Sec. 78. Like proceedings may be instituted on the affidavit of any person interested against executors, administrators, or surviving partners, and on conviction the court shall compel such executor, administrator or surviving partner to inventory the property and cause the same to be appraised as the property of the estate."

In discussing the question whether or not a proceeding under these sections is an action or suit, BARCLAY, J., in the case of Eckerle v. Wood, 95 Mo. App. l. c. 385, after a thorough review of the cases, said: "In the case at bar, the statutes (Secs. 74-78, R. S. 1899) provide a distinct proceeding for the disclosure of assets of an estate in certain circumstances. The proceeding is special, no doubt; but it comprehends all the essential elements of a suit. It presents a moving party, an adverse party, and it requires a decision by a tribunal invested with jurisdiction to determine it. [Tygard v. Falor, 163 Mo. 234.] The proceeding is one wherein a trial by jury is expressly authorized. A grant of power implies a grant of all incidental authority necessary to make the principal grant ef-

fective. [State v. Ryno, 49 N. J. L. 603.] A trial by jury of an issue of fact may require the production of testimony by deposition. The provision made for such a trial implies that the Legislature regarded the inquiry as in the nature of an action. We consider that it is within the scope of the intention of the Legislature in the use of the words 'suit pending' in section 2877, R. S. 1899.''

In the Eckerle case they sought to have depositions taken upon issues made by interrogatories and answers, and the St. Louis Court of Appeals was asked to prohibit the taking of such depositions, but the court denied the writ, holding as above indicated.

In Tygard v. Falor, 163 Mo. 234, Tygard filed an affidavit in the probate court of Vernon county charging Falor, as executor of his father's estate, with having concealed and having in his possession $2,700 or $2,800, and of having failed and refused to inventory it. Interrogatories were filed as were also answers thereto. On a trial in the probate court, the issues were found for the defendant, Falor. Upon appeal, a trial was had in the circuit court before a jury, which jury found thus: ''We, the jury, find the defendant guilty of wrongfully withholding $2,783 from the estate of Elias Falor, as charged.'' On this verdict, a judgment was entered in accordance with section 78, compelling the defendant to inventory the money thus found to be in his possession. Appellants in that case relied upon some of the Court of Appeals cases relied upon by the respondents in the case at bar. Of course, had those cases been good law, this court should have reversed the Tygard case, but instead the proceedings therein were affirmed, and we think properly so.

So, too, in the very recent case, In re Estate of Jacob Huffman, 132 Mo. App. 44, the St. Louis Court of Appeals holds such actions to be ''suits'' within the meaning of the law, and that court after full re-

view of authorities approves of a trial of the issues made by the improvised pleadings before a jury.

We have no doubt that the proceding is a suit or action within the meaning of the law, and further that the jurisdiction is fixed by the amount and value of the property alleged to be in the possession of the parties defendant, and by them not inventoried. This amount exceeds the jurisdiction of the Kansas City Court of Appeals, even under the Act of 1909, raising such jurisdiction to $7,500. We therefore rule that there was no error in the Kansas City Court of Appeals certifying this cause to this court for final disposition.

II. Going to the second question suggested in our statement, an answer thereto is practically indicated by our holding in the first paragraph.

In the very recent case of In re Estate of Huffman, 132 Mo. App. 44, the St. Louis Court of Appeals through GOODE, J., so thoroughly states our views that we shall borrow largely therefrom. The case is identical with the case at bar. It is a proceeding against an administrator and administratrix, instituted by heirs at law. Judge GOODE with great patience and much labor has compared our statutes with those of other States. He has analyzed the decisions of other States and shown their inapplicability to cases under our statutes. On this subject he says:

"The Missouri statutes dealing with the subject differ from those of all the other States we have examined in essential particulars; chiefly in providing for a trial by jury of the issues raised. This provision is not found in any of the statutes of other states cited *infra*, except Maryland; and text-writers derive the proposition that the right of property cannot be tried in a proceeding like this one, from cases in other jurisdictions. [2 Woerner's Law of Administration (2 Ed.), pp. 671 to 682; Schouler, Exrs., sec. 270; 18 Cyc.

216, par. D and notes.] But those cases, so far as the decisions are based on the lack of a statutory provision for a trial by jury, should be eliminated in considering the effect of our statutes. The opinions usually treat this omission as the decisive reason for saying property rights cannot be determined. [Dinsmoor v. Bressler, 164 Ill. 211, 232; In re Beebe, 20 Hun (N. Y.) 462, 464; Howell v. Fry, 19 Ohio St. 556; Gardner v. Gillihan, 20 Ore. 598, 601.]"

Then, after a full review of further cases and statutes, he says:

"It will be seen from the foregoing summary of statutes and cases, that the adjudications in other jurisdictions can lend little assistance in the attempt to ascertain the object and effect of our statutes, in consequence of the wider scope of the procedure these provide and the use of materially different language— language suggestive of an intention to create a new method of both discovery and recovery. It is worthy of note that in the Statutes of 1845, where the proceeding was first authorized and presumably the policy of the Legislature put into effect, it is said if the defendant appears and in his answer to the interrogatories denies the right of the executor or administrator to the goods, chattels, money, etc., 'the right thereof shall be tried by a jury; or, if neither party require a jury, by the court, in a summary manner, and judgment shall be rendered according to the right and for costs.' This language imports a purpose to provide a method for determining the right of property as between the estate and the person accused of concealing or embezzling assets. The Statutes of 1855 (Sec. 10), instead of saying the right shall be tried, say the issue shall be tried; meaning the issue of whether the property is concealed or embezzled. The present statutes cover assets concealed, embezzled or otherwise wrongfully withheld, and sections 77 and 78 say the issue upon the interrogatories and answers

filed, shall be tried by a jury, etc., and if the defendant is convicted, the court shall compel him to deliver the property detained; or, if he be an executor or administrator, compel him to inventory it. In our opinion, this legislation was not enacted merely to provide a method of investigating the good faith of a person who detains assets, but to provide also a remedy by which detained assets could be brought quickly into the course of administration. The notion that the only object was to facilitate the discovery of hidden assets, preliminary to an action to recover them, is fallacious and founded on the decisions of jurisdictions where statutes, enacted only to assist discovery, prevail; and which do not take care of the constitutional right of trial by jury in cases involving property rights, because no property rights are involved under said statutes, but only information. In this State a jury trial of the issues is allowed and also an appeal; thus preserving to a defendant all the rights he would enjoy in any other form of action. It is unlikely that this elaborate procedure was devised simply to discover assets. The purpose was broader— to expedite the administration of estates by affording a new and speedy remedy for collecting assets. The same policy led to the creation by the administration statutes of other extraordinary remedies; for instance the allowance of small demands (R. S. 1899, sec. 200) or the redemption, sale and conveyance of real estate (Ch. 1, art. 8). In order to bring the administration of estates under the control of courts of probate as much as possible, and to hasten the proceedings therein those matters may be disposed of by novel procedures.

"We turn from the foregoing argumentation to consider the effect of the decisions rendered by the Supreme Court on the statutes in question. In Eans v. Eans, 79 Mo. 53, an administrator proceeded against the widow of his decedent to get possession of assets of great value alleged to belong to the estate. The

widow claimed them under a marriage settlement, and on the first hearing, which was before the law embraced assets wrongfully withheld, the circuit court held the question was whether the widow had concealed or embezzled the property; and held, also, if the court found the property was kept by her under color or claim of right as a separate estate, it had no jurisdiction, but the administrator must resort to the proper action at law or in equity. On this view of the law the court dismissed the cause for want of jurisdiction in the probate court to entertain it. On appeal the Supreme Court reversed the ruling and said that, under the statutes, the probate court had jurisdiction to hear and decide the question of whether the property in controversy remained the separate property of the widow under the marriage contract, and that the circuit court had committed error in dismissing the complaint for want of jurisdiction. The case was retried in the lower court, again appealed, and the second appeal is reported as Gordon v. Eans, 97 Mo. 587. By reading the instructions copied in the opinion, it will be perceived that on the second trial, the circuit court tried the entire question of ownership under the marriage settlement, as affected by various circumstances tending to show a reduction of the property to possession by the husband with the assent of his wife. Meanwhile, before the second trial, the law had been amended so as to make the proceeding applicable, not only to cases of concealment and embezzlement, but to those of wrongful detention of property. Several opinions were rendered on the second appeal. The judge who wrote the opinion on the first appeal and the main one on the second, so explained and modified, in a rehearing opinion, what he had previously said, that it is difficult to discern the theory of law on which the case was decided. But the judgment was affirmed, and this involved a decision that the

trial court had not committed error in adjudicating the right of property. One concurring opinion upheld this course by virtue of the amendment of March 16, 1881, extending the remedy to cases of assets wrongfully withheld. The opinion said the administrator had submitted the issue of wrongful withholding 'based on the question of actual title,' and the court, by virtue of the amendment, had power to hear and determine such an issue. A judge or two dissented from the proposition that the probate court could determine the right of property. If the precise point decided in Gordon v. Eans is dubious, there can be no doubt about what was decided in Tygard v. Falor, 163 Mo. 242, a case identical with the one at bar. Falor was executor of his father's estate, and Tygard, as trustee, instituted a proceeding in the probate court against him on the statutes for the purpose of compelling him to inventory a certain asset. The affidavit charged Falor with having in his possession $2,800 in money belonging to the deceased which had not been inventoried; with receiving the money as agent of the deceased and never accounting for it. Interrogatories were propounded in the probate court which indicated the money had been collected by the executor from sales of cattle belonging to his father. His answers to the interrogatories admitted that he had sold and collected the money for the cattle and had deposited part of it in certain banks in his own name, but set up that the money thus deposited was not turned over to his father because the latter had given it to him and told him to keep it; that for the same reason he had not charged himself as executor with the money. He denied having concealed it or any other property belonging to the estate. On the trial in the probate court judgment was for the defendant and the plaintiff appealed. In the circuit court there was a trial *de novo* on the interrogatories and answers, and the jury found the defendant guilty of wrongfully withholding $2,738 from the

estate, as charged. Among other instructions the defendant requested the court to inform the jury that, if his father had given him the money, he was not required to inventory it as part of the estate and the verdict should be in his favor; that the proceeding was criminal in its nature, and if the jury believed the defendant had refused to inventory the money in good faith as a gift from his father, and in no way had tried to conceal it, the verdict should be for defendant; further, that the sole and only question presented was the guilt or innocence of the defendant in concealing the money as charged. These instructions were refused and on the appeal error was assigned for their refusal. Error was assigned, too, on an instruction given by the court which told the jury to find the defendant guilty of wrongfully withholding the money from the estate, unless they found his father had given it to him to keep and hold as his own personal property and that the burden of proof as to this issue was on the defendant. The Supreme Court affirmed the judgment in said cause; thereby affirming the proposition that the right of property may be tried in a proceeding like this. The opinion dealt with the alleged error of the trial court in refusing to instruct that, if the defendant had omitted to inventory the money in question because he claimed it openly as a gift from his father, the verdict should be for the defendant. The court said the instruction given for the plaintiff was correct, the two instructions asked by the defendant were properly refused, and that the substantial issue to be tried was the question of whether or not Falor had given the money in dispute to his son. The very proposition invoked by appellant in the present case was raised in said cause by the executor, to wit, that the inquiry must be restricted to the question of good faith; and some of the authorities now cited in support of this proposition were cited in the executors' brief in said cause, viz:

Cardwell v. Stuart, 67 Mo. App. 61; Stewart v. Glenn, 58 Mo. 489; Hoehn v. Struttmann, 71 Mo. App. 399. Though the Supreme Court did not expressly overrule those cases, it ignored them and decided against their doctrine. The opinion in Tygard v. Falor cannot be reconciled with the prior decisions of the appellate courts and, of course, we must follow the Supreme Court. Its opinion is decisive against both of appellant's main contentions, namely, that interrogatories cannot be exhibited against an administrator and evidence heard on them, and that the right of property cannot be tried. It is also decisive that the issues to be tried are made up by the interrogatories and the answers, and that the probate court and the circuit court on appeal, have jurisdiction. Therefore, we overrule the contrary contentions of appellant.''

We concur in all that he has said in this opinion. We believe that property rights are to be tried in such cases. It is a summary and quick method of bringing property into the estate. The probate court is a court of record, and in practice, when not otherwise provided, may borrow from the Code. Whilst perhaps in the case at bar it was not necessary for a reply to be filed to the answers of the interrogatories, and the cases seem to indicate that the issues to be tried were upon the interrogatories and the answers thereto, yet we are of opinion that to sharpen and shorten the real issues a reply should be permitted.

The opinion of Judge GOODE, supra, recedes from the position formerly taken by the two Courts of Appeals, and we think rightfully. The opinion of BARCLAY, J., of the St. Louis Court of Appeals, in effect receded from the position of several of the cases named in the opinion of GOODE, J.

The circuit court was in error in dismissing the appeal in this case. It was likewise in error in refusing the filing of the replication. The replication should have been filed, and the issues thereby sharply de-

fined, and then if desired by either of the parties, such issues should have been tried before a jury as in Tygard v. Falor, supra, and as in the Huffman case, supra.

The cause is therefore reversed and remanded with the directions hereinabove indicated. All concur.