C. C. EVANS, ADMR., ETC., RESPONDENT, v. SUSAN T. WILLIAMS, APPELLANT.*

Kansas City Court of Appeals. April 2, 1928.

*Corpus Juris-Cyc References: Appeal and Error, 3CJ, section 1505, p. 1359, n. 52; section 1506, p. 1363, n. 74; section 1592, p. 1429, n. 59; Bills and Notes, 8CJ, section 1287, p. 979, n. 5; Evidence, 22CJ, section 14, p. 68, n. 43; Trial, 38Cyc, p. 1340, n. 98; p. 1341, n. 6; p. 1385, n. 47; p. 1626, n. 69; p. 1670, n. 5.

*John Ewing* and *Ed Kelso* for respondent.

*O. B. Hudson* for appellant.

ARNOLD, J.—This is an action to recover possession of a promissory note alleged to be unlawfully claimed by defendant, the controversy being over the ownership of said note.

The facts of record are that one W. G. Evans was the owner of a farm in Worth county, Missouri, where he resided with his children before and after the death of his wife; that he sold his farm realizing therefrom the sum of $3500; that $2500 of this amount he loaned to one G. W. Mathews, taking his promissory note therefor, payable to the order of W. G. Evans, dated January 10, 1919, payable on or before January 10, 1924, at six per cent interest and signed by G. W. Mathews and Genie Mathews, his wife, secured by a deed of trust on forty acres of land in Worth county, Missouri. The said note was assigned by the payee to James T. Evans and Irvin E. Williams, and thereafter was indorced on the back by James T. Evans, Zulma Evans, Susan T. Williams and Irvin E. Williams, and stamped on the face thereof: "Cancelled Dec. 26, 1923; Samuel A. Cloud, Recorder." Also stamped on the face "Paid Dec. 20, 1923, Bank of Denver."

On December 20, 1923, a new note payable to W. G. Evans was executed by said Mathews and wife for the same amount and delivered to W. G. Evans in lieu of the note first above mentioned. The last named or renewal note was due in three years at six per cent interest and was unsecured. On the back appears the following indorsement: "Interest paid to Dec. 20, 1924." W. G. Evans died August 5, 1925,

leaving surviving him three children, all married, C. C. Evans, a son, was duly appointed administrator of deceased's estate and brought this suit in behalf of the estate against defendant Susan T. Williams, a daughter of the deceased. The suit was originally instituted in the probate court of Worth county, Missouri, by the filing therein of an affidavit executed by C. C. Evans, administrator, on January 9, 1926, stating he has good cause to believe and does believe that one Susan T. Williams has concealed and embezzled and is otherwise wrongfully withholding from said administrator one promissory note, of date December 20, 1923, for the sum of $2500, which said note is signed by G. W. Mathews and his wife, Genie Mathews, which said note was and is made payable in three years after date, with interest at six per cent per annum, payable annually, and interest accumulated therein in the sum of $210, or thereabouts, and that Susan T. Williams has said note in her possession and under her control. *Scire facias* was issued thereon and served upon defendant. In response thereto defendant appeared before the probate court and was examined; thereafter interrogatories were filed by plaintiff and answers thereto were filed by defendant in the probate court. As these interrogatories and answers form the basis of a charge of error on this appeal, it is deemed best to set them out herein, as follows:

"No. 1. Have you in your possession a promissory note of date December 20, 1923, due in three years after date, given by G. W. Mathews and Genie Mathews to W. G. Evans, now deceased, and belonging to the estate of said W. G. Evans, deceased?

"No. 2. If you say you have possession of that note, how did you obtain possession of that note, and why do you not deliver said note to the administrator of the estate of said W. G. Evans, deceased?"

The answers of defendant to said interrogatories were as follows:

"Answer to interrogatory No. 1. Yes.

"Answer to interrogatory No. 2. The note was delivered to me by the Bank of Denver, and I refused to deliver possession of it to the administrator of the estate of W. G. Evans, deceased, because it belongs to me and is not the property of said estate."

In addition to the interrogatories and answers there was evidence introduced. The probate court ruled that upon the pleadings and evidence plaintiff was entitled to recover and judgment was accordingly entered finding that at the commencement of the action the note in question was wrongfully held by defendant. An appeal was taken to the circuit court of Worth county and the cause was there tried before the court and jury, resulting in a verdict and judgment for plaintiff. Defendant appeals. No other pleadings than those above mentioned were filed.

The record discloses that C. C. Evans, referred to in the evidence as Chris, administrator of the estate and plaintiff herein, Susan T.

Williams, defendant, and James T. Evans, referred to in the record as Taylor, are the only surviving children of W. G. Evans, deceased, and are the immediate parties in interest herein. The question at issue is the ownership of the note in question, plaintiff claiming it as the property of the estate of W. G. Evans, and defendant claiming it by virtue of a verbal contract between defendant and her father whereby she agreed to take care of him as long as he lived; and further claiming she had received nothing from her father while her brothers, Chris and Taylor had each received his share.

At the beginning of the trial in the circuit court, on motion of plaintiff, defendant was required to assume the burden of showing that she is the owner of the note in controversy. Defendant saved her exception to this ruling and now makes it the basis of a charge of error. On the trial defendant, testifying in her own behalf, admitted she was in possession of the note in question; that said note had not been indorsed by W. G. Evans but that the same was delivered to her by her father in his lifetime, under a verbal contract entered into between them, by the terms of which W. G. Evans was to make his home with defendant during the remainder of his life; that defendant was to take care of him, furnishing his board, washing, clothing and necessary medical care; that defendant accepted said note in full consideration for said services; that after making said contract W. G. Evans made his home with defendant and in every way she had faithfully performed her part of said contract; that after the contract was made defendant had requested her father to place the note for safe keeping for her in the Bank of Denver, Denver, Missouri, and agreed that as the interest matured on said note, he could collect it for his own personal use, and that if not sufficient for such purpose, defendant would make up the difference, which she did. In these statements defendant was corroborated by other witnesses, to-wit, her husband and others.

It appears in evidence that W. G. Evans made his home with defendant on her farm part of the time, and part of the time lived with the son Taylor, who resided in the City of St. Joseph, Mo.; that in August, 1925, decedent went to St. Joseph to remain awhile with his said son; that he became quite ill and was taken to a hospital where his death occurred on August 5, 1925. It also appears that defendant and her brother Taylor each paid one-half the expense of decedent's last sickness and burial. Defendant testified that the payment of one-half said expenses by her brother Taylor was voluntary on his part. It is upon these circumstances that defendant claims ownership of the note in question.

Evidence introduced in behalf of defendant was to the effect that plaintiff C. C. Evans and Taylor Evans each had previously received his share of the father's estate during the father's lifetime,

and that defendant had received nothing therefrom until he delivered to her the note in controversy. In behalf of plaintiff the evidence discloses that about the year 1921, W. G. Evans was security on some notes and other obligations not definitely enumerated; that decedent was then past seventy years of age. In order that a forced payment of said claims might not deplete his estate, on March 31, 1921, he entered into a written contract with defendant and her husband and with the son Taylor and his wife, providing that in consideration of their support and maintenanance of him and the expenses of his last sickness and burial, they were to have the certain note above mentioned then owned by him and which was executed by G. W. and Genie Mathews, secured by a deed of trust, and that this note was all the property he had; that by making said contract and delivering the note to his said children, he would have no property and so could not be made to respond on his said security obligations. The said note was indorsed by W. G. Evans and delivered to defendant under the terms of said contract for the use of herself and Taylor Evans. It appears further that after making said contract and after the expiration of a few years, the notes and other obligations upon which decedent was surety were paid and cancelled; and that the two children with whom he had made the written contract above mentioned, and which was introduced in evidence, indorsed the said $2500 note without condition and delivered it to decedent. That note then was cancelled and marked paid and a new one in the same amount in lieu thereof was issued, and this is the note in controversy here.

At this point there is a conflict in the evidence. In behalf of plaintiff the testimony tends to show that the note was taken by decedent and placed in the vaults of the Bank of Denver in his name for safe keeping; while in behalf of defendant the evidence tends to show that decedent delivered the note to her under the terms of the verbal contract, and that she asked him to leave it at said bank for her. It is in evidence also that the interest on said indebtedness was sometimes paid to decedent and at other times to defendant. There is evidence tending to show that defendant never made claim to the ownership of said note until after the death of her father.

The testimony further shows that after the death of W. G. Evans, defendant and her brother Taylor went to the Bank of Denver with the avowed intention of examining the papers of their father held there for safe keeping; and that when the note was given defendant for examination by one of the bank's officer's she refused to return it and took the note and the written contract made March 31, 1921, away with her and placed them in the hands of her attorney at Grant City for safe keeping. On the occasion of her visit to her said attorney she was accompanied by her brother Taylor, and together they consulted the attorney about the validity of the contract. The attor-

ney placed the note and contract in an envelope and wrote on the outside thereof: "To be delivered to Susan T. Williams and Taylor Evans when both are present," or words to that effect. However, defendant is not claiming ownership of the note under the terms of the written contract dated March 31, 1921, but under the new and separate verbal contract.

It is strenuously contended the court erred in requiring defendant to assume the burden of proving her ownership of the note in question; and in support of this contention it is urged that the suit is based upon the verified petition of plaintiff and two interrogatories and answers thereto; and that in this state of the pleadings and before any testimony was introduced, on motion of plaintiff, the court required defendant to assume the burden, over her objections. It is insisted that as plaintiff charged defendant with concealing, embezzling and wrongfully withholding the note, the burden is on plaintiff to prove these charges, and that this burden continues throughout the case. Numerous cases are cited in support of defendant's contention, but on examination, none is found to apply to the facts herein.

As heretofore stated the pleadings in the case consist of plaintiff's affidavit, upon which the *scire facias* was issued, and the interrogatories and answers thereto. It is plaintiff's position that the answers by defendant to the interrogatories are in the nature of confession and avoidance; the answer to the first being in the nature of a confession that she held the note, and the answer to the second being in the nature of an avoidance in that defendant, by said answer, claims ownership thereof. We agree with plaintiff in this respect and hold the ruling of the trial court as to the burden of proof was proper. It was held in Tygard v. Falor, 63 Mo. 234, 245, opinion by Sherwood, J.:

"Defendant having answered the interrogatories as he did, made out against himself a prima-facie case; his admissions of fact in response to such interrogatories virtually converted his answers into a plea of confession and avoidance, and the burden was therefore on him to establish such avoidance." Ordinarily, it must be conceded, the burden of proof is on the plaintiff to establish his case. But where, as in the case at bar, the defendant admits the note originally belonged to W. G. Evans and now claims ownership thereof (and we so construe the answer), it devolves upon defendant to prove such ownership. In Gibson v. Swofford, 122 Mo. App. 126, 128, it is said:

"There was no substantial dispute as to defendant's having the property and that originally it belonged to his son. He, however, claimed to have purchased a part of it of the son prior to his death. Ordinarily, the burden of proof is on the plaintiff, but on issue as

here presented it devolved upon the defendant to show that he bought the property of his son.''

To the same effect is the case of Roelofson v. Whitten, 249 S. W. 688, where this court held that where a son claimed certain municipal bonds, alleged to belong to his deceased mother's estate, were a gift to him, the burden of proof was on him. [Citing Tygard v. Falor, supra; Clinton v. Clinton, 223 Mo. 371, 387, 123 S. W. 1.] The rule above enunciated is well established in this State and we hold against defendant on this point.

It is urged the court erred in admitting in evidence the written contract of decedent, defendant and Taylor Evans because such contract was abrogated and had no application to the merits of the case. This objection is not well taken. It is the rule in this State that if the document is admissible for any purpose its reception in evidence is not error. That its introduction was for one purpose only is clear from plaintiff's instruction 4, given by the court, wherein the jury are told that all of the testimony offered in the case pertaining to the written contract shall be considered by them only for the purpose of determining ''whether or not the note in controversy was given to defendant by W. G. Evans, in compensation for services rendered by defendant to him.'' Being so limited there was no error in the contract in evidence. This ruling carries with it also a ruling against defendant's contention that the court erred in admitting evidence as to the intention of the parties relative to the said contract.

Defendant presents seventeen assignments of error, some of which are interchangeably referred to, and therefore may be considered together. Assignments 2, 3, 4 and 5 are so presented interchangeably. No authorities are cited under 2 and 4, but under 3 and 5, the case of Ex parte Dick v. Ellison, 287 Mo. 139, 154, is cited, wherein it is held that one objection to incompetent evidence if properly made is sufficient. We think this may be accepted as the general rule. But assignments 2, 3, 4 and 5 are general and defendant fails to specify wherein the evidence complained of was incompetent, thus leaving this court to search the record for any error that may be found therein. Under our rule 17, this is something the court is not required to do. [Williams v. Bank, 280 S. W. 720.]

The same ruling is applicable to defendant's assignment No. 6, wherein objection is attempted to be made to the exclusion of certain declarations of W. G. Evans, deceased, regarding his disposition of the note in controversy. Defendant refers to specific pages in the record as containing such errors, but a perusal of them fails to disclose that such evidence, in fact, was excluded. Without further and more definite information on the question we are unwilling to convict the trial court of error in this respect. Defendant's citations on this point therefore cannot be applied. The same condition exists as to

defendant's assignment No. 7, wherein complaint is made as to the exclusion of evidence regarding the intentions of decedent and defendant in regard to the disposition of the note in controversy. The record shows this evidence was in fact admitted.

Defendant complains the court erred in giving plaintiff's instruction No. 1, in that the first paragraph thereof states to the jury that defendant admits she took, and now holds, the note in controversy; that, when made, said note was the property of W. G. Evans; that it was not inventoried and appraised as part of the estate of W. G. Evans. It is urged that: "It is not admitted by the pleadings that said note was a part of the estate of W. G. Evans. This issue was denied." We think the instruction not subject to the criticism directed against it. The instruction recites:

"It is admitted that Susan T. Williams took and holds the note . . . (describing the note) and that said note at the time it was made belonged to and was the property of W. G. Evans, and that said note has not been inventoried and appraised as a part of the estate of W. G. Evans."

A mere glance at the interrogatories and answers thereto shows that the admissions mentioned in the instruction were made. There was no error in this respect.

A similar complaint is lodged against plaintiff's instruction 2, and the same ruling applies.

It is urged plaintiff's instructions 2, 4 and 5 are erroneous because not in harmony with some well-defined principle of law which defendant does not bring to the attention of this court by citation. The court will not search out authorities to apply to objections not clearly defined.

Complaint is made that the court erred in modifying defendant's instruction No. 1. The part of the instruction stricken out by the court was "or was given and delivered to defendant as her share of the estate of William G. Evans." This is not the theory upon which defendant tried her case. Defendant insisted that the note in question was hers by reason of a verbal contract with her father for his care and maintenance, and it was upon that theory she tried her case. The clause above quoted was properly stricken from the instruction.

The four remaining charges of error are (a) that the verdict was for the wrong party; (b) upon the whole record it appears defendant did not have a fair trial; (c) the court erred in overruling defendant's motion for a new trial, and (d) the court erred in overruling defendant's motion in arrest of judgment. Inasmuch as defendant fails to refer to these charges further, under the rulings, we may consider them abandoned.

We fail to find reversible error of record and the judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.