SPENCER PETROLEUM COMPANY, RESPONDENT, v. ATLAS PETROLEUM COMPANY, APPELLANT.*—38 S. W. (2d) 476.

Kansas City Court of Appeals.  Opinion filed ——— ——, ——.

*Cooper, Neel, Kemp & Sutherland* and *Frank J. Rogers* for respondent.

*Hanna & Hurwitz* for appellant.

CAMPBELL, C.—Plaintiff's action was instituted to recover an alleged balance due on a contract for the delivery of oil.  A trial before the court, jury being waived, resulted in a judgment for plaintiff, and defendant has appealed.

It is admitted that plaintiff's statement does not contain any material misstatement of fact, and we will therefore adopt pertinent parts thereof which read:

"The evidence shows that the four instruments pleaded in plaintiff's petition were all executed August 20, 1927.  That these contracts were executed at the same time and not one of them was signed until all were agreed on and it was understood between the parties that the four contracts evidenced only one transaction.

"The evidence showed these contracts to be as follows:  Contract No. 1 between the McMillen Oil Corporation and the Spencer Petroleum Company.

"By this instrument the McMillen Oil Corporation sold to the Spencer Petroleum Company 180,000 barrels of crude oil at a price to be 12½ cents less than the market price, which at that time was 95 cents per barrel, said buying price to vary as the market price varied; delivery to be made to the Peerless Refining Company

at Chanute, Kansas, at the rate of 500 barrels daily; payment $50,000 in trade acceptances of $10,000 each maturing in 30-60-90-120 and 150 days to be delivered to seller at the execution of the contract; after $50,000 worth of oil had been shipped, payment to be made on the 10th and 25th of each month.

"'Contract No. 2 between the Spencer Petroleum Company and the Atlas Petroleum Company.

"By this instrument the Spencer Petroleum Company sold the same 180,000 barrels of oil so purchased from the McMillen Oil Corporation, to the Atlas Petroleum Company, at a price per barrel to be five cents less than the market price, said selling price to vary in the full decline and one-half the advance of the market price, delivery to be made to the Peerless Refining Company of Chanute, Kansas, at the rate of 500 barrels daily. As an advance payment buyer was to deliver to the seller $50,000 in trade acceptances of $10,000 each, maturing in 30-60-90-120 and 150 days, the balance of the oil after $50,000 worth was shipped, to be paid for on the 10th and 25th of each month as shipped. The contract further provided that the 180,000 barrels of oil sold by the seller to the buyer was the crude oil purchased by the seller from the McMillen Oil Corporation under contract of same date, and further, that if the McMillen Oil Corporation failed to perform its contract in delivering the oil, as specified in its contract, to the Spencer Petroleum Company, then the Spencer Petroleum Company should not be obligated to deliver the said crude oil to the Atlas Petroleum Company, to the extent of the failure of the McMillen Oil Corporation to perform its contract.

"Contract No. 3 between R. L. Mehorney and the Spencer Petroleum Company.

"A contract of guaranty by which R. L. Mehorney guaranteed that the McMillen Oil Corporation would deliver to the Spencer Petroleum Company, or its order, $50,000 worth of crude oil under the terms of the contract between the McMillen Oil Corporation and the Spencer Petroleum Company, and in the event the McMillen Oil Corporation failed to so deliver oil in that amount, to hold the Spencer Petroleum Company harmless and pay any loss' suffered by the Spencer Petroleum Company occasioned by the failure of said McMillen Oil Corporation to deliver oil in the amount of $50,000.

"Contract No. 4 between the Spencer Petroleum Company and the Atlas Petroleum Company.

"By this instrument the Spencer Petroleum Company agreed with the Atlas Petroleum Company that in the event it became necessary to enforce the Mehorney guarantee, all proceeds realized thereunder should be paid to the Atlas Petroleum Company, and the Spencer

Petroleum Company further agreed that in the event the McMillen Oil Corporation failed to perform its contract, that it, the Spencer Petroleum Company further agreed that in the event the McMillen Oil Corporation and R. L. Mehorney in any manner requested by the Atlas Petroleum Company.

"The evidence showed that at the time of the execution of the contracts aforesaid, and as a part of the general agreement the Atlas Petroleum Company delivered to the Spencer Petroleum Company its five trade acceptances of $10,000 each, maturing in 30-60-90-120-150 days, respectively; that the name of the drawer was left blank, that the Spencer Petroleum Company, at the same time, and as a part of the agreement, delivered these five trade acceptances to the McMillen Oil Corporation and accepted its receipt therefor. · ·"The evidence further showed that it was mutually agreed between the Spencer Petroleum Company, the Atlas Petroleum Company and the McMillen Oil Corporation, that these acceptances should read between McMillen Oil Corporation and the Atlas Petroleum Company and should serve as the advance payment required by both contracts.

"The evidence further showed that deliveries of oil began shortly after August 20, 1927; that the McMillen Oil Corporation shipped the oil direct to the Peerless Refining Company at Chanute, Kansas; that the McMillen Oil Corporation billed the Spencer Petroleum Company at the contract price between said companies which was a price twelve and one-half cents less than the market price; that the Spencer Petroleum Company, in turn, billed the Atlas Petroleum Company at the contract price between these companies, which was five cents less than the aforementioned market price, and seven and one-half cents more than the price which the McMillen Oil Corporation billed the Spencer Petroleum Company; that the Atlas Petroleum Company, in turn, reinvoiced the oil to the Peerless Refining Company at a profit of seven and one-half cents per barrel over the price it was billed by the Spencer Petroleum Company; that 24837.18 barrels of oil were shipped by the McMillen Oil Corporation and received by the Peerless Refining Company; that the Atlas Petroleum Company received a profit of seven and one-half cents per barrel over and above its contract price with the Spencer Petroleum Company, on all the oil shipped.

"The evidence was that the posted price referred to in the McMillen-Spencer contract and the Spencer-Atlas contract was ninety-five cents per barrel on August 20, 1927, the date of the signing of the contracts; that immediately thereafer and before any oil was shipped the price dropped to seventy-five cents per barrel and remained at this price during the life of the contracts, that under the posted price the Spencer Petroleum Company, was billed by McMillen Oil Corporation sixty-two and one-half cents per barrel; the Atlas Petroleum Company, was billed by the Spencer Petroleum

Company, at a price five cents under the market price or seventy cents per barrel and the Atlas Petroleum Company, in turn, billed the Peerless Refining Company seventy-seven and one-half cents per barrel.

The evidence further was that the McMillen Oil Corporation was not able to furnish oil in sufficient quantities to amount in value to the $10,000 trade acceptances falling due each month; that on October 20, 1927, when the second trade acceptance fell due, the McMillen Oil Corporation was in arrears in shipments of oil; that Mr. Taxman, president of the Atlas Petroleum Company, talked many times to Mr. Rankin, local manager of the Spencer Petroleum Company, regarding the delay in shipments of oil; that when the second trade acceptance of $10,000 fell due, the McMillen Oil Corporation had only delivered some three or four thousand dollars' worth of oil to apply against this acceptance; that Taxman called on the officers of the Spencer Petroleum Company and on Mehornay, the guarantor of the McMillen Oil Corporation, to either make good by shipments of oil or under the guarantee; that Rankin of the Spencer Petroleum Company gave Mehornay written notice that the Spencer Petroleum Company expected him to take care of this deficiency; that the officers of the Atlas Petroleum company were greatly disturbed over this failure of the McMillen Oil Corporation to ship oil fast enough to take care of the trade acceptances as they fell due, and asked the officers of the Spencer Petroleum Company to express themselves as to what could be done; that Mr. Spencer of the Spencer Petroleum Company assured the representatives of the Atlas Petroleum Company that, regardless of anything else, both companies were protected by Mehornay's guarantee, and advised them, and called to their attention, that this guarantee covered $50,000 worth of crude oil based upon the price named in the Spencer-McMillen contract and that there was a seven and one-half cents margin between the price as billed to the Spencer Petroleum Company and the price the Spencer Company billed the Atlas Company, and that this margin was protected by Mehornay's guaranty. Spencer also advised the officers of the Atlas Petroleum Company that his company had gone to considerable expense in promoting this deal, such as maintaining a man at the shipping point of this oil, numerous long distance telephone calls, and other expenses, and that the seven and one-half cents margin did not represent profit alone, but a great deal of it was expense and that the Spencer Petroleum Company expected reimbursement, either on the seven and one-half cents per barrel profit on oil actually shipped, or under Mehornay's guaranty.

"That on October 29, Mehornay was called upon to make good under his guaranty for the deficiency in shipments of oil during the

second month; that the settlement was made in Mr. Taxman's office; that Mehornay gave Mr. Taxman a check for $6,250; that Mr. Taxman and Mr. Carson of the Atlas Petroleum Company were present and also Mr. Rankin of the Spencer Petroleum Company.

"Mr. Rankin testified that he did not know how the $6,250 was arrived at, and· did not know the price used in calculating the credit allowed to Mehornay on the oil shipped; that the Spencer Petroleum Company made no claim for any part of the money advanced, but it was all paid to the Atlas Petroleum Company; that his company joined with the. Atlas Company in executing a receipt to Mehornay.

"Mr. Spencer, president of the respondent · company, testified that he was not present at the time of settlement and did not know how the $6,250 was arrived at.

"Mr. Carson and Mr. Taxman of the Atlas Company, were present and took part in the settlement; both testified that they knew how the $6,250 was arrived at; they testified that this figure was arrived at by taking the value of the crude oil shipped during the second month after the first acceptance of $10,000 had been met, figured at the price the Spencer Petroleum Company billed their company and subtracting that value from $10,000, the second trade acceptance, which left $6,250; they further testified that the Spencer Petroleum Company made no claim to any part of the $6,250.

"The evidence further showed that after this settlement, only 2395.44 barrels of oil were delivered and that on November 3, 1927, the McMillen Oil Corporation went into receivership; that the total amount of oil delivered to the Atlas Petroleum Company, and resold by that company to the Peerless Refining Company, was 24837.18 barrels.

"The evidence further showed that after the receivership of the McMillen Oil Company, the representatives of the Atlas Petroleum Company called on the receiver to see if more oil could be furnished; that numerous conferences were held between the representatives of the Atlas and Spencer companies; that the Atlas Petroleum Company, and its representatives, were greatly concerned over the failure of the McMillen Company, and of the failure to receive oil under its contract, and also of the loss of its profits on the resale of this oil; that the representatives of the Spencer Petroleum Company assured the Atlas Petroleum Company that there was nothing to be alarmed about and that the guarantor, R. L. Mehornay, was responsible and that nothing would be lost, but that Mehornay under his guaranty, was responsible to both companies for any loss on the failure to deliver the $50,000 worth of oil and that they, the Spencer Petroleum Company, expected him to make good any loss suffered by both companies from the failure of the McMillen Com-

pany to deliver the $50,000 worth of oil; that although numerous conferences and conversations were held between the Atlas representatives and the Spencer representatives, the Atlas People at no time presented a specific way in which they desired the guarantee to be enforced; that the bank holding the trade acceptances was demanding that the Atlas Petroleum Company take care of the acceptances; that the Atlas Petroleum Company feared that its credit would be damaged if something was not done immediately and that on December 3, 1927, the Atlas people, without the knowledge of the Spencer Petroleum Company, went to the guarantor, R. L. Mehornay, and obtained a settlement; that Mehornay paid to the Atlas Petroleum Company, or the bank holding its trade acceptances, $28,776.85; that this amount was arrived at by subtracting the value of the oil delivered after October 29, the date of the first settlement with Mehornay, using the Atlas Petroleum Company's buying price, from the amount of the trade acceptances outstanding, to-wit, $30,-000, leaving this balance.

"The evidence showed that the representatives of the Atlas Petroleum Company attempted to get Mehornay to pay, in addition to the trade acceptances outstanding, the value of the profits that it would have made, had the oil been delivered; and also the profits guaranteed to the Spencer Petroleum Company; that Mehornay refused to pay any more than the money actually advanced in trade acceptances by the Atlas people and told them he would go to court first; that the Atlas people, rather than suffer any delay, waived their profits and settled for the amount of their trade acceptances outstanding.

"The evidence showed that the Atlas people knew, at all times, that contracts through which this oil was sold, netted the Spencer Petroleum Company a profit of seven and one-half cents per barrel and that the Atlas people agreed to forego this profit guaranteed Spencer as an inducement to persuade Mehornay to settle with them.

"The evidence further showed that the Atlas Petroleum Company made a profit on the resale of all the oil delivered to them, to-wit, the 24,837.18 barrels, of seven and one-half cents per barrel and were anxious to secure a profit on the oil that the balance of the $50,000 would have procured, but, owing to their fear of loss of credit at the bank, and of the delay of a lawsuit, they decided to forego this profit and accepted from Mehornay just enough to take care of the balance of the $50,000 unpaid.

"The evidence further showed that the Spencer Petroleum Company did not make one cent profit on this whole transaction, but, on the contrary, expended considerable money in promoting this transaction, as has been heretofore referred to.

"The evidence showed that as soon as the Spencer Petroleum Company learned of this settlement, it demanded that the Atlas Petroleum Company pay it the balance of the purchase price on the oil delivered, that is, seven and one-half cents per barrel remaining unpaid on the oil delivered and the seven and one-half cents per barrel profit that it would have received on the oil made good by Mehornay's guarantee, that this demand was denied and suit was brought to enforce such demand."

It is apparent from the foregoing that the guaranty relates to the failure to deliver oil and has naught to do with the oil that was actually delivered.

The trial court allowed a recovery for the oil actually delivered and denied recovery for the profits on undelivered oil. Whether the failure to award recovery for undelivered oil was proper, is immaterial, because plaintiff abided and the defendant, of course, cannot complain.

Oral evidence was introduced by both plaintiff and defendant, to which no objection was made, tending to show the meaning and effect of the several writings, and to show the construction placed thereon by the parties thereto.

Considering the recitations in the various instruments and the oral evidence, it is clear that defendant agreed to pay plaintiff the sum of seven and one-half cents profit per barrel for all oil delivered to its order; that plaintiff caused 24,837.18 barrels of oil to be delivered upon defendant's orders. Defendant is therefore indebted to plaintiff in the sum allowed by the court.

Plaintiff insists that we should ignore the defendant's contention because defendant has not cited an authority to support any of the points advanced in its brief. There is authority for that insistence. [Evans v. Williams, 4 S. W. (2d) 867, 879.]

Counsel for defendant, with lawyer-like frankness, in reply say: "With such a case before this court, appellant was at a loss to figure any 'points and authorities.'"

Upon considering the entire record, it is clear the judgment is for the right party and should be, and is affirmed. The Commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion by CAMPBELL, C., is hereby adopted as the opinion of the court. The judgment is affirmed. All concur, except *Trimble, P. J.,* absent.